BRADLEY JEREMY TINDER, Plaintiff-Appellant, v. THE DEPARTMENT OF PUBLIC AID et al., Defendants-Appellees.

Third District    No. 3—02—0826

Opinion filed February 24, 2004.

Janet M. Cartwright (argued), of Equip for Equality, Inc., of Rock Island, for appellant.

Lisa Madigan, Attorney General, of Chicago (Gary S. Feinerman, Solicitor General, and Catherine Basque Weiler (argued) and Nadine J. Wichern, Assistant Attorneys General, of counsel), for appellees.

JUSTICE LYTTON delivered the opinion of the court:

Plaintiff applied to the Illinois Department of Human Services (IDHS) for admission into a "Community Integrated Living Arrangement" (CILA), a residential program seeking to habilitate the developmentally disabled. The IDHS denied the application and the trial court affirmed the denial. We reverse.

Plaintiff, Bradley Tinder, is 29 years old. He has suffered from cerebral palsy since birth, and although his IQ is low, he does not suffer from mental retardation. In 1995, he graduated from the Illinois Center for Rehabilitation and Education, a special state school serving the physically disabled and operated by the Illinois Department of Human Services. After his graduation, plaintiff was placed in a CILA. CILA provides Medicaid-eligible developmentally disabled persons an opportunity to live in a community setting, often in a single-family residence with other participants. The program provides "active treatment," or "habilitation," which may include training and education in cooking, home management, budgeting, and other day-to-day skills. The program also provides counseling, physical and occupational therapy, and community outings and social events. The objective of the CILA program is to promote optimal independence for persons

with developmental disabilities in daily living and economic self-sufficiency in small group settings.

Plaintiff voluntarily moved from the CILA in 1997 and took residence in an intermediate-care facility for the developmentally disabled. He stayed there for two years and then moved to a supervised apartment complex that serves disabled individuals. Plaintiff experienced serious problems while living at the apartment complex and was hospitalized in 1999 with a severe case of bowel impaction. After being discharged from the hospital, plaintiff moved to a nursing home for convalescent care. Later, he transferred to Sterling Pavilion, a general population nursing home where he currently resides.

In 1999, plaintiff began a long application process seeking placement in a CILA program. The IDHS rejected plaintiff's application finding that he was not "developmentally disabled" and would not benefit from "active treatment." Plaintiff appealed to the Illinois Department of Public Aid (IDPA) and after an administrative hearing, the IDPA upheld the IDHS' denial of the Medicaid waiver for CILA funding. In its administrative decision, the IDPA found that plaintiff was not developmentally disabled. Plaintiff filed a complaint for administrative review in the circuit court. The court upheld the IDPA's determination.

## I. Standard of Review

■ In reviewing a final decision under administrative review law, we review the agency's finding, not the circuit court's determination. *Metropolitan Airport Authority v. Property Tax Appeal Board*, 307 Ill. App. 3d 52, 55 (1999). An agency's findings of fact will be disturbed only if they are against the manifest weight of the evidence. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). Questions of law, however, are not entitled to deference and are reviewed *de novo*. *Envirite Corp. v. Illinois Environmental Protection Agency*, 158 Ill. 2d 210, 214 (1994).

## II. Developmental Disability

The IDPA argues that its regulation requires that a developmentally disabled individual exhibit significant cognitive defects in order to be a candidate for active treatment. Further, since active treatment results in enhanced skills and self-reliant behavior, and since plaintiff's limitations are totally physical and cannot be overcome by learned behavior, he is not a candidate for active treatment.

We disagree and find that neither the statute nor the regulations promulgated under it require an applicant to qualify for active treatment. The state statutory and regulatory scheme defines developmental disability, and explicitly includes, without qualification, those suffering from cerebral palsy.

## A. The IDPA's Regulation

█ Under the IDPA's regulation, individuals qualify as developmentally disabled if they have a disability that

> "is attributable to a diagnosis of mental retardation (mild, moderate, severe, profound, unspecified), or a related condition. A related condition means the individual has been diagnosed as having infantile autism, infantile cerebral palsy or epilepsy, and this condition is manifested before the age of 22; is likely to continue indefinitely; and results in substantial functional limitations in three or more of the following areas of major life activity:
>
> i) self-care;
> ii) understanding and use of language;
> iii) learning;
> iv) mobility;
> v) self-direction;
> vi) capacity for independent living." 89 Ill. Adm. Code § 140.642(b)(1)(A) (2003).

The IDPA claims that under the regulation, plaintiff must suffer cognitive as well as physical limitations in major life activities, making him a candidate for active treatment. The IDPA concedes that plaintiff has a "related condition" (cerebral palsy) and that he does suffer substantial physical and cognitive limitations in two areas: self-direction and capacity for independent living. The IDPA agreed that plaintiff suffers substantial physical limitations in two additional areas, self-care and mobility, but denied him eligibility because those limitations were not also cognitive.

The Administrative Code defines developmental disability as a disability attributable to mental retardation *or* a related condition. The use of the disjunctive "or" indicates that the disability can derive from either mental retardation or a related condition. See *People v. Frieberg*, 147 Ill. 2d 326, 349 (1992) (holding that the ordinary use of the disjunctive "or" indicates a choice between alternatives). Cerebral palsy is specifically listed as a related condition. Thus, to qualify as developmentally disabled, the plaintiff must have (1) a disability attributable to cerebral palsy, (2) the condition was manifest by age 22, (3) it is likely to continue indefinitely, and (4) it results in substantial limitations in at least three life activities. The Administrative Code includes no requirement that the limitations of an applicant with a "related condition," such as cerebral palsy, be mental and physical; it only mandates that an applicant suffer substantially in at least three of six life activities.

█ There is no dispute that plaintiff has a disability attributable to cerebral palsy which manifested itself before age 22 and is likely to

continue indefinitely. Both parties agree that plaintiff suffers substantial limitations in four major life activities. Under the Administrative Code's requirements, plaintiff is developmentally disabled. The regulation does not include a requirement that the applicant be a candidate for active treatment, and this court will not add such a requirement. See *Nottage v. Jeka*, 172 Ill. 2d 386, 392 (1996) (holding that when interpreting statutes, courts should not add requirements or impose limitations that are inconsistent with the plain meaning of the enactment).

## B. The Statute and IDHS Regulations

■ Illinois law and IDHS regulations also define developmental disability:

> "a disability which is attributable to: (a) mental retardation, cerebral palsy, epilepsy or autism; or to (b) any other condition which results in impairment similar to that caused by mental retardation and which requires services similar to those required by mentally retarded persons." 405 ILCS 5/1—106 (West 1998).

See also 59 Ill. Adm. Code § 120.10 (2003).

The statute lists impairments that qualify as developmental disabilities: mental retardation, cerebral palsy, epilepsy, autism, *or* any other condition similar to mental retardation. Again, the disjunctive "or" between the two clauses creates separate categories of eligible persons. If individuals suffer a disability attributable to cerebral palsy, they are developmentally disabled; there is no separate requirement that the person also be cognitively impaired and, thus, a candidate for active treatment. Under the plain language of the statute, a disability caused by the condition of cerebral palsy qualifies as developmentally disabled.

■ All the parties agree that plaintiff has cerebral palsy and that he suffers limitations in four major life activities. He should not have been denied admission into the CILA program. We acknowledge that the goal of CILA is to provide participants with the tools to eventually move toward a more independent lifestyle and that the participants' eligibility for active treatment is crucial to that goal. Under the law and regulations as they are written, however, plaintiff need not be eligible for active treatment to be admitted into CILA.

## III. Active Treatment

Since we have found that plaintiff meets the eligibility requirements for CILA placement without the necessity for active treatment, we need not address this issue.

## CONCLUSION

The judgment of the circuit court of Whiteside County is reversed.

Reversed.

McDADE and SCHMIDT, JJ., concur.