THOMAS BIEKERT, Plaintiff-Appellee, v. BARRY S. MARAM, Director of Healthcare and Family Services, or His Successor, in His Official Capacity, *et al.*, Defendants-Appellants.

Fifth District   No. 5—07—0700

Opinion filed March 27, 2009.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Brian F. Barov and Mary E. Welsh, Assistant Attorneys General, of counsel), for appellants.

Barry G. Lowy, of Equip for Equality, Inc., of Springfield, for appellee.

PRESIDING JUSTICE WEXSTTEN delivered the opinion of the court:

The plaintiff filed in the circuit court of St. Clair County a complaint for administrative review against the defendants, Barry S. Maram, in his official capacity as the Director of Healthcare and Family Services (DHCFS), and Carol L. Adams, in her official capacity as the Secretary of Human Services (DHS). Before the DHCFS, the plaintiff sought funding for community integrated living arrangement (CILA) services under the Illinois Medicaid home and community-based services for adults with developmental disabilities (HCBS-DD) waiver program, which allows developmentally disabled adults to receive needed services outside of an institution. DHCFS determined that the plaintiff was not eligible for CILA services because he was not in need of "active treatment." *In re Biekert*, Ill. Department of Healthcare & Fam. Services Op. 93—112—107116 (December 8, 2006). The circuit court reversed DHCFS's decision, found that the plaintiff was eligible for placement in CILA, and directed the defendants to fund in-home CILA services appropriate for the plaintiff's needs. We affirm in part and vacate in part.

## BACKGROUND

The plaintiff has had cerebral palsy since shortly after his birth in 1961. On September 27, 2001, he applied for 10 hours per day of intermittent in-home services with the preadmission screening (PAS) agency charged with determining eligibility for CILA services for persons with developmental disabilities. The PAS agent, Michelle Maxwell, found him eligible and determined that he had a need for active treatment. However, DHS, which oversees funding and services to persons with developmental disabilities, thereafter issued a letter denying the plaintiff those benefits.

On or around October 11, 2005, the plaintiff again applied for CILA services, and PAS agent Craig Mentzer evaluated the plaintiff on behalf of DHS. Mentzer found that the plaintiff was developmentally disabled, having substantial functional limitations in self-care, mobility, and capacity for independent living, but he determined that

the plaintiff was not eligible for the CILA program because he did not require active treatment. On January 6, 2006, the plaintiff appealed that decision to DHCFS.

On October 17, 2006, DHCFS conducted an administrative hearing. At the hearing, Mentzer testified that his duties included screening and assessing individuals to determine their eligibility for Medicaid waiver funded services. Mentzer testified that he assessed the plaintiff's functioning as equivalent to an overall adaptive age of three years and one month. Mentzer stated that he determined that the plaintiff needed assistance in bathing, dressing, grooming, and hygiene. Mentzer testified that the plaintiff was not ambulatory, had a wheelchair, and required someone in the home to assist him. Mentzer admitted that the plaintiff needed life skills training in areas of activities of daily living and use of his limbs, including assistance to maintain his skills in his left hand. Mentzer testified that the plaintiff would not "be able to live independently in the community by himself." Based upon the documentation and his assessment, Mentzer found the plaintiff "heavy in developmental disability, but not [in] need of active treatment," because, although the plaintiff was physically unable to perform various tasks, he had the cognitive ability to know how to do so.

The representative for DHS, Robert Holladay, acknowledged that the HCBS-DD waiver program was a developmental disability waiver program, authorizing services to groups who have a developmental disability and not only to those with mental retardation. Holladay testified that the CILA program is a form of residential support services under the HCBS-DD waiver program for persons with developmental disabilities who need active treatment. Holladay acknowledged that the plaintiff was a person with a developmental disability who was diagnosed with cerebral palsy that occurred prior to the age of 22 and who experienced substantial functional limitations in three out of six major life activity areas because of the cerebral palsy. Holladay testified, however, that the plaintiff was ineligible for the CILA program because he did not need active treatment.

Holladay testified that "active treatment" was a provision derived from the regulations and was another term for "habilitation," which is the acquisition of new behaviors. Holladay testified that a need for "active treatment" involved "some kind of cognitive limitation." Holladay testified that the plaintiff had the capacity to make his own decisions medically and financially, was intelligent and aware of his surroundings, had earned a high school education, and had participated in college courses. Holladay testified that the plaintiff did not need specialized training or guidance to learn skills such as eating

independently. Holladay testified that the plaintiff knew what he needed to do and knew how to manage his affairs. Holladay stated, for example, that if someone suggested to the plaintiff that he slow down, he could do it immediately and would not need the type of specialized program to teach him how to do so.

Holladay testified that the plaintiff's needs involved physical supports, for adaptive equipment and adaptive modifications to his environment. Holladay testified that because the plaintiff needed only physical supports and training for his physical development, he did not need "the kind of specialized training that [is] provide[d] within active treatment." Holladay stated the following:

"[The plaintiff] did not appear to require aggressive and consistent programming. These are parts of the definition of [']active treatment.['] Continuous programming to acquire new skills or maintain current ones *** , aggressive and consistent programming, things like every hour of every day, the same way for every staff person, whoever there *** comes in and works with the individual. And they have to seek opportunities to teach the individual how to develop the skill that they're looking for."

Holladay admitted that numerous supports and therapies that would address the plaintiff's physical needs caused by his cerebral palsy fell under the definition of "active treatment." Holladay acknowledged that the plaintiff needed an evaluation for the progression of his cerebral palsy, medical services for his history, physical and other therapies to address his rigidity and spasticity, residential care and assistance in his applications of daily living, and ongoing medical and diagnostic services to prevent decubitus and bowel-related conditions. Holladay acknowledged that these are services available to people who need active treatment but that these services are not the core part of active treatment because the core part of active treatment deals with a person's cognition.

After reviewing the evidence and testimony presented at the administrative hearing, the hearing officer upheld DHS's decision to deny the plaintiff's request for CILA services under the HCBS-DD waiver program. Specifically, the hearing officer stated, "The record of the hearing shows that it is clear that the [plaintiff] is a person with [d]evelopmental [d]isabilities and requires active treatment," but the hearing officer also stated, "[H]is need for active treatment is due to his physical needs and not his cognitive needs." On December 8, 2006, DHCFS entered its final administrative decision, adopting the findings of fact of the hearing officer and denying CILA services to the plaintiff. *In re Biekert*, Ill. Department of Healthcare & Fam. Services Op. 93—112—107116 (December 8, 2006).

On January 8, 2007, the plaintiff filed a complaint for administrative review, requesting the circuit court to find him eligible for in-home CILA services and to order DHCFS and DHS to fund the in-home intermittent CILA services. The plaintiff argued before the circuit court that to be eligible for CILA services, under the HCBS-DD waiver program, he must only demonstrate that he suffers from a qualifying developmental disability which occurred prior to age 22 and is likely to continue indefinitely and results in substantial functional limitations in three or more major life activities. The plaintiff argued that he need not demonstrate the need for "active treatment" to qualify for services. The defendants argued that the HCBS-DD waiver and DHS's PAS manual require that an individual applying for HCBS-DD waiver services, such as CILA services, be developmentally disabled and in need of active treatment. The defendants argued that, although the plaintiff met the definition of "developmentally disabled," because the plaintiff was not cognitively impaired and his need for services was purely physical in nature, he did not require active treatment.

On November 13, 2007, the circuit court found that the plaintiff was eligible for in-home CILA services, and the court reversed the decision of DHCFS. The circuit court ordered that the plaintiff be provided in-home CILA services "in an amount appropriate to meet [his] needs as determined by his interdisciplinary team." On December 14, 2007, the defendants filed a notice of appeal.

## ANALYSIS

DHCFS is a state administrative agency that issues final administrative decisions subject to review by the circuit court under the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2004)). In reviewing an administrative decision, the court must consider whether the question presented is one of fact, one of law, or a mixed question of fact and law. *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001). If the issue necessitates the interpretation of a statute, regulation, or rule connected with the administrative agency involved in the case, the question is one of law, the standard of review for the reviewing court is *de novo*, and the agency's interpretation is considered relevant but not binding on the reviewing court. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 380 (2008); *Branson v. Department of Revenue*, 168 Ill. 2d 247, 253-54 (1995).

"Administrative rules and regulations have the force and effect of law ***." *Madigan*, 231 Ill. 2d at 380. Courts must construe administrative rules and regulations under the same standards that

govern the construction of statutes, with the primary objective to ascertain and give effect to the drafters' intent. *Madigan*, 231 Ill. 2d at 380. The surest and most reliable indicator of the drafters' intent is the regulation's language. *Madigan*, 231 Ill. 2d at 380. In determining the plain meaning of a regulation, "we consider the regulation in its entirety, keeping in mind the subject it addresses and the apparent intent *** in enacting it." *Madigan*, 231 Ill. 2d at 380. We must "read the regulatory scheme as a whole, 'so that no part of it is rendered meaningless or superfluous.' " *Perez v. Illinois Department of Children & Family Services*, 384 Ill. App. 3d 770, 773 (2008), quoting *People v. Jones*, 214 Ill. 2d 187, 193 (2005); see also *Marion Hospital Corp. v. Illinois Health Facilities Planning Board*, 324 Ill. App. 3d 451, 456 (2001) ("administrative rules and regulations should be construed together with the statute pursuant to which they were adopted in order to insure a sound and effective legislative program"). "Where the language of the regulation is clear and unambiguous, we must apply it as written ***." *Madigan*, 231 Ill. 2d at 380.

Established in 1965 when Congress amended the Social Security Act, Medicaid is a cooperative federal-state program under which states receive federal funding to provide medical assistance to low-income groups. 42 U.S.C. §1396 *et seq.* (2006); *Hines v. Department of Public Aid*, 221 Ill. 2d 222, 226-27 (2006). State participation in the Medicaid program is voluntary, but if a state elects to participate, it must comply with the requirements of the Medicaid Act and the regulations promulgated thereunder. 42 U.S.C. §1396a (2006); *Alexander v. Choate*, 469 U.S. 287, 289 n.1, 83 L. Ed. 2d 661, 664 n.1, 105 S. Ct. 712, 714 n.1 (1985); *Hines*, 221 Ill. 2d at 226-27.

A state with an approved Medicaid plan may also apply for a waiver, which allows the state to include, as "medical assistance," payments for "home or community-based services" (as opposed to institutional services) that are approved and that are provided pursuant to a written plan of care. 42 U.S.C. §1396n(c)(1) (2006); *Grooms v. Maram*, 563 F. Supp. 2d 840, 844 (N.D. Ill. 2008). To qualify for such a waiver, the home or community-based services provided by the state must be available to individuals for whom there has been a determination that, absent home and community-based care, the individuals would require the level of care provided in an institution, the cost of which could be reimbursed under the state plan. 42 U.S.C. §1396n(c)(1) (2006). "Waivers are intended to provide the flexibility needed to enable [s]tates to try new or different approaches to the efficient and cost-effective delivery of health care services[ ] or to adapt their programs to the special needs of particular areas or groups of recipients." 42 C.F.R. §430.25(b) (2007); see also *Wood v. Tompkins*, 33

F.3d 600, 602 (6th Cir. 1994) ("waiver[s] save[ ] both the state and the federal government money, because home care is often less expensive than institutional care"). To participate in the waiver program, states must apply to the federal Centers for Medicaid and Medicare Services. 42 C.F.R. §430.25(e) (2007).

The record reveals that Illinois's HCBS-DD waiver program targets the "mentally retarded and developmentally disabled" and seeks to provide services to individuals who, but for the provision of those services, would require the level of care for an intermediate care facility for mentally retarded or persons with related conditions (ICF/MR). Illinois requires that its HCBS-DD waiver program include such services as adult day health, habilitation, environmental accessiblity adaptations, specialized medical equipment and supplies, and extended state plan services, including speech, physical, and occupational therapy services. "Habilitation" is defined in appendix A of Illinois's waiver-renewal request as "an individualized array of supervision, support, assistance[,] and training services designed to allow individuals with developmental disabilities to reside successfully in a community setting." "Habilitation assists individuals to acquire, retain[,] and improve self-help, socialization, daily living, mobility, learning, communications, self-sufficiency, community access[,] and other necessary skills [and] includes the reduction of maladaptive behaviors through positive behavioral supports and other methods."

CILA is one of the Medicaid waiver services provided to Illinois adults with developmental disabilities under the HCBS-DD waiver program. Pursuant to the Community-Integrated Living Arrangements Licensure and Certification Act (the Act), its purpose is "to promote the operation of community-integrated living arrangements for the supervision of persons with mental illness and persons with a developmental disability by licensing community mental health or developmental services agencies to provide an array of community-integrated living arrangements for such individuals." 210 ILCS 135/2 (West 2004). A community-integrated living arrangement is provided for recipients with mental illness or recipients with a developmental disability who reside under the supervision of the agency. 210 ILCS 135/3(d) (West 2004). The Act defines "recipient" as "a person who has received, is receiving, or is in need of treatment or habilitation as those terms are defined in the Mental Health and Developmental Disabilities Code [(the Code) (405 ILCS 5/1—100 et seq. (West 2004))]." 210 ILCS 135/3(e) (West 2004). Pursuant to the Code, "treatment" is defined as "an effort to accomplish an improvement in the mental condition or related behavior of a recipient" and "includes, but is not limited to, hospitalization, partial hospitalization, outpatient services,

examination, diagnosis, evaluation, care, training, psychotherapy, pharmaceuticals, and other services provided for recipients by mental health facilities." 405 ILCS 5/1—128 (West 2004). Pursuant to the Code, "habilitation" is defined as "an effort directed toward the alleviation of a developmental disability or toward increasing a person with a developmental disability's level of physical, mental, social[,] or economic functioning" and "may include, but is not limited to, diagnosis, evaluation, medical services, residential care, day care, special living arrangements, training, education, sheltered employment, protective services, counseling[,] and other services provided to persons with a developmental disability by developmental disabilities facilities." 405 ILCS 5/1—111 (West 2004); see also 59 Ill. Adm. Code §120.10 (eff. March 8, 1996).

The defendants argue that the plaintiff is ineligible for CILA services because he does not require "active treatment." Citing *Tinder v. Department of Public Aid*, 346 Ill. App. 3d 510, 511 (2004), the plaintiff argues that the need for "active treatment" is not a requirement for CILA eligibility.

Pursuant to federal and state law and its own documentation, the HCBS-DD waiver program is available only to recipients who, in the absence of the waiver services, would require the Medicaid-covered level of care provided in an ICF/MR, in that the waiver services are an alternative to an ICF/MR placement. 42 U.S.C. §1396n(c)(1) (2006); 42 C.F.R. §441.301(b)(1)(iii)(C) (2007); 59 Ill. Adm. Code §120.140(c) (eff. March 8, 1996); see also 59 Ill. Adm. Code §120.50 (eff. March 8, 1996) (the target population to be served by Medicaid home and community-based services for the developmentally disabled is Medicaid-eligible adults with developmental disabilities who would otherwise require services in an ICF/MR). An ICF/MR is an institution furnishing health or rehabilitative services to individuals with developmental disabilities, *i.e.*, the mentally retarded or persons with related conditions. 42 U.S.C. §1396d(d) (2006); 42 C.F.R. §440.150(a)(2) (2007); 89 Ill. Adm. Code §144.25 (eff. June 28, 1996). "Persons with related conditions" are defined as individuals who have a severe chronic disability that is attributable to, among other things, cerebral palsy, is manifested before age 22, is likely to continue indefinitely, and results in substantial functional limitations in three or more of areas of major life activity (self-care, understanding and use of language, learning, mobility, self-direction, and capacity for independent living). 42 C.F.R. §435.1010 (2007); 59 Ill. Adm. Code §120.140(c) (eff. March 8, 1996) (referencing the criteria for an ICF/MR level-of-care determination as set out in section 140.642(b)(1)(A) (89 Ill. Adm. Code §140.642(b)(1)(A), amended at 27 Ill. Reg. 14821 (eff. September 5, 2003)), which states, "A

developmental disability is a disability that is attributable to a diagnosis of *** a related condition," and "A related condition is attributable to[ ] cerebral palsy ***," and "[T]his condition is manifested before the age of 22; is likely to continue indefinitely; and results in substantial functional limitations in three or more of the *** areas of major life activity"); see also 89 Ill. Adm. Code §144.25(a)(1)(B) (eff. June 28, 1996) ("[t]he need for ICF/MR services shall be established through a comprehensive assessment *** that demonstrates that the individual *** has *** a related condition" that is attributed to cerebral palsy, etc.).

The federal and state scheme further provides that clients who are admitted by an ICF/MR must be in need of and receiving active treatment services. 42 U.S.C. §1396d(d)(2) (2006); 42 C.F.R. §§440.150(a)(4), 483.440(b)(1) (2007); 89 Ill. Adm. Code §144.25(a)(1) (eff. June 28, 1996). Specifically, the Illinois Administrative Code provides, "The need for ICF/MR services shall be established through a comprehensive assessment (see 89 Ill. Adm. Code [§]140.642), the Level II assessment, that demonstrates that the individual needs active treatment and has [a related condition meeting criteria]." 89 Ill. Adm. Code §144.25(a)(1) (eff. June 28, 1996).

In *Tinder*, the appellate court held that the plaintiff was considered developmentally disabled pursuant to Illinois law because he had a disability attributable to cerebral palsy which manifested itself before age 22 and was likely to continue indefinitely and because both parties agreed that the plaintiff suffered substantial limitations in four major life activities. *Tinder*, 346 Ill. App. 3d at 513-14. The court held, "The regulation [(89 Ill. Adm. Code §140.642, amended at 27 Ill. Reg. 14821 eff. September 5, 2003)] does not include a requirement that the applicant be a candidate for active treatment ***." *Tinder*, 346 Ill. App. 3d at 514. Accordingly, the court held that because the plaintiff was considered developmentally disabled pursuant to Illinois statute and regulations and because he was not required to demonstrate a need for active treatment, the plaintiff should not have been denied admission into the CILA program. *Tinder*, 346 Ill. App. 3d at 514.

We agree with the court's conclusion in *Tinder* that the plaintiff in that case (and by extension the plaintiff in the case *sub judice*), who had a related condition that was attributed to cerebral palsy, was manifested before the person reached age 22, was likely to continue indefinitely, and resulted in substantial functional limitations in three or more areas of major life activities, was considered to be developmentally disabled, *i.e.*, a person with a related condition, and was therefore considered to be in the target population that an ICF/MR (and by extension the HCBS-DD waiver program) serves. See 42 U.S.C.

§1396d(d) (2006); 42 C.F.R. §440.150(a)(2) (2007); 89 Ill. Adm. Code §144.25(a) (eff. June 28, 1996).

However, the court in *Tinder* failed to address the requirements that the HCBS-DD waiver services, such as CILA services, are furnished only to recipients who would require the Medicaid-covered level of care provided in an ICF/MR (42 U.S.C. §1396n(c)(1) (2006); 42 C.F.R. §441.301(b)(1)(iii)(C) (2007); 59 Ill. Adm. Code §120.140(c) (eff. March 8, 1996)) and that to be eligible for ICF/MR services, an individual not only must have, for example, a related condition resulting in a developmental disability but also must be in need of active treatment (42 C.F.R. §483.440(b)(1) (2007); 89 Ill. Adm. Code §144.25(a)(1) (eff. June 28, 1996)). We therefore disagree with the court's conclusion in *Tinder* that a plaintiff need not be in need of active treatment to be eligible for CILA services. See *Tinder*, 346 Ill. App. 3d at 514. Instead, we agree with the defendants that the plaintiff must be developmentally disabled and in need of active treatment to be eligible for Medicaid HCBS-DD waiver services, including CILA services. See *Partlow v. Indiana Family & Social Services Administration*, 717 N.E.2d 1212 (Ind. App. 1999) (the plain language of 42 U.S.C. §1396d(d) (1994) requires that a patient in an ICF/MR be either a mentally retarded person in need of active treatment or a person with a related condition in need of active treatment).

We therefore turn to the question of whether the evidence at the administrative hearing demonstrated that the plaintiff was in need of "active treatment." This issue presents a mixed question of fact and law and involves an examination of the legal effect of a given set of facts. See *AFM Messenger Service, Inc.*, 198 Ill. 2d at 390. In a situation where questions of law and fact are mixed, the reviewing court shall not reverse the administrative agency's decision unless that decision is found to be clearly erroneous. *AFM Messenger Service, Inc.*, 198 Ill. 2d at 390-91. A decision is clearly erroneous when the reviewing court, on the entire record, is left with the definite and firm conviction that a mistake has been made. *AFM Messenger Service, Inc.*, 198 Ill. 2d at 395.

"Active treatment" is defined by the federal and state regulatory scheme as "a continuous active treatment program, which includes aggressive, consistent implementation of a program of specialized and generic training, treatment, health services[,] and related services described in this subpart, that is directed toward—(i) The acquisition of the behaviors necessary for the client to function with as much self[-]determination and independence as possible; and (ii) The prevention or deceleration of regression or loss of current optimal functional status." 42 C.F.R. §483.440(a)(1) (2007); see also 89 Ill. Adm. Code

§144.25(a)(2) (eff. June 28, 1996) (" ['][a]ctive treatment['] is defined by federal regulations at 42 C[.]F[.]R[.] [§]483.440(a)").

"Active treatment does not include services to maintain generally independent clients who are able to function with little supervision or in the absence of a continuous active treatment program." 42 C.F.R. §483.440(a)(2) (2007); 89 Ill. Adm. Code §144.25(a)(2) (eff. June 28, 1996); see also *Doe v. Bush*, 261 F.3d 1037, 1059 (11th Cir. 2001) (federal regulations establish that individuals who are admitted to a facility must satisfy a certain baseline level of need before the facility will be allowed to participate in the Medicaid scheme (citing 42 C.F.R. §483.440(b)(1) (2000))); 59 Ill. Adm. Code §120.140(c) (eff. March 8, 1996) ("[i]ndividuals demonstrating the ability to function independently shall not be eligible for program services").

The evidence before the hearing officer supported its conclusion that the plaintiff was in need of active treatment. Specifically, the hearing officer held, "[I]t is clear that the [plaintiff] is a person with [d]evelopmental [d]isabilities and requires active treatment." Mentzer testified that the plaintiff needed life skills training in areas of activities of daily living and use of his limbs to help maintain his current functioning level. Holladay testified that the plaintiff needed the following CILA services, specifically incorporated within the definition of "habilitation": an evaluation of the progression of his cerebral palsy, physical and other therapies to address his rigidity and spasticity, and residential care and assistance with his activities of daily living.

We reject the defendants' contention that the plaintiff is generally independent and therefore not in need of active treatment. See 42 C.F.R. §483.440(a)(2) (2007); 89 Ill. Adm. Code §144.25(a)(2) (eff. June 28, 1996). Mentzer testified that the plaintiff needed assistance in bathing, dressing, grooming, and hygiene; that he was not ambulatory, had a wheelchair, and required someone in the home to assist him; that he was "heavy in developmental disability"; and that he was "not going to be able to live independently in the community by himself." Holladay agreed that the plaintiff needed residential care and assistance in his applications of daily living and that his condition would deteriorate without therapies.

Although the hearing officer concluded that the plaintiff was a person with a developmental disability who required active treatment, she concluded that he was ineligible for services under the waiver program because "his need for active treatment is due to his physical needs and not his cognitive needs." The hearing officer adopted the defendants' argument that "active treatment" is intended to address cognitive deficits rather than physical deficits for those mentally proficient enough to direct their own daily living needs. Accordingly,

the defendants argue that because the plaintiff is merely in need of physical assistance to accomplish certain tasks and does not require active treatment for a cognitive deficit, he is ineligible for the federally funded HCBS-DD waiver program, of which CILA is a part. Seeking to overcome the plain language of the regulations' definition of "active treatment," the defendants reference DHS's PAS manual's construction of "active treatment." The plaintiff argues that the PAS manual's construction of the term "active treatment" is not found within the federal or state regulations and is inconsistent with the Illinois definition of "habilitation" found in the waiver application and the array of services available under Title 59, section 120, 40 (59 Ill. Adm. Code §120.40 (eff. March 8, 1996)), both of which include physical supports.

DHS's PAS manual provides "interpretive guidelines" to assist the PAS agency to accurately assess an individual's need for active treatment. Chapter 500 of the manual provides that the "continuous programing" involved in active treatment "is not meant to include the need for continuous nursing services, continuous physical supports, continuous psychiatric or forensic services, continuous monitoring to prevent substance abuse, or other interventions that may also be provided on a continuous basis, unless those interventions are needed in addition to or in support of the specialized training for developmental needs." The manual provides that, with regard to "specialized and generic training, treatment, health services[,] and related services" to acquire new skills or maintain current ones, within the definition of "active treatment," "*[t]he essential feature of specialized training is that it addresses an individual's developmental (especially cognitive) needs.*" (Emphasis in original.) The manual further provides, in pertinent part, as follows:

> "In active treatment settings, specialized training is pursued by the interdisciplinary team until the goal is reached or until substantial effort has been expended without evidence of further progress. Individuals who have not mastered these and similar skill areas for reasons that do not include a need for developmental/cognitive training must not be determined to be persons who need active treatment. For example, persons who require only physical supports and personal or environmental adaptive accommodations to accomplish such skills are not persons who require active treatment."

DHS's interpretation of active treatment to include a cognitive element, as expressed in the PAS manual, is inconsistent with the federal and state regulations and the HCBS-DD waiver. 42 C.F.R. §483.440(a)(1) (2007); 89 Ill. Adm. Code §144.25(a)(2) (eff. June 28, 1996) (" [']active treatment['] is defined by federal regulations at 42

C[.]F[.]R[.] [§]483.440(a)"); see *Morton v. Ruiz*, 415 U.S. 199, 237, 39 L. Ed. 2d 270, 295, 94 S. Ct. 1055, 1075 (1974) ("the weight of an administrative interpretation will depend, among other things, upon 'its consistency with earlier and later pronouncements' of an agency," and "[i]n this instance the [agency's] somewhat inconsistent posture belies its present assertion," quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 89 L. Ed. 124, 129, 65 S. Ct. 161, 164 (1944)). The plain language of the statutes, the federal and state regulatory scheme, and the HCBS-DD waiver do not limit active treatment to treatment only for cognitive-related deficits. *Christensen v. Harris County*, 529 U.S. 576, 588, 146 L. Ed. 2d 621, 632, 120 S. Ct. 1655, 1663 (2000) (an agency cannot "under the guise of interpreting a regulation *** create *de facto* a new regulation").

We agree with the plaintiff that Illinois chose a developmental disabilities waiver and by doing so adopted the public policy that a broader category of persons than those with mental retardation would be funded under the waiver. This is consistent with the purpose of the Act (210 ILCS 135/2 (West 2004)) and its definition of "recipient," which includes a person who is in need of habilitation, which is defined as "an effort directed toward the alleviation of a developmental disability or toward increasing a person with a developmental disability's level of physical, mental, social[,] or economic functioning." 405 ILCS 5/1—111 (West 2004); 210 ILCS 135/3(e) (West 2004).

Additionally, the Illinois regulatory scheme describing the services covered under the Medicaid home and community-based service waiver program provides, "All services shall be rendered in accordance with a written individual service/support plan and shall be designed to ensure the continuity of supports and services for individuals." 59 Ill. Adm. Code §120.40 (eff. March 8, 1996). Services include respite, habilitation services, adaptive equipment and minor home modifications, including personal adaptive equipment, and other adaptive equipment that includes beds, feeding machines, adapted telephones, pagers, intercoms, emergency signalers, and adapted alarm clocks. 59 Ill. Adm. Code §120.40 (eff. March 8, 1996).

Likewise, the Illinois HCBS-DD waiver program includes such services as adult day health, habilitation, environmental accessibility adaptations, specialized medical equipment and supplies, and extended state plan services, including speech, physical, and occupational therapy services. "Habilitation" is defined in appendix A of Illinois's waiver-renewal request as "an individualized array of supervision, support, assistance[,] and training services designed to allow individuals with developmental disabilities to reside successfully in a community setting." "Habilitation assists individuals to acquire, retain[,]

and improve self-help, socialization, daily living, mobility, learning, communications, self-sufficiency, community access[,] and other necessary skills [and] includes the reduction of maladaptive behaviors through positive behavioral supports and other methods."

The enumerated services clearly include physical support services, and again, nothing in the plain language of the statutes, regulations, or waiver requires that a person be in need of services for cognitive defects prior to being eligible for the physical support services. Accordingly, although we agree that the regulations require the plaintiff to be in need of active treatment to be eligible for CILA services, we disagree with the defendants' assertion that the plaintiff is not in need of "active treatment" because he requires only physical supports and is not in need of cognitive-based skills training.

The defendants argue that even if the plaintiff were eligible for CILA services, the circuit court exceeded its authority on administrative review in directing DHS and DHCFS to fund CILA services for the plaintiff. The defendants argue, *inter alia*, that there was no adjudication in this case on the issue of whether the plaintiff met the priority population criteria, which might give him precedence over some of the other 10,000 persons with developmental disabilities who have unmet needs and are awaiting placement in the HCBS-DD waiver program.

Section 3—111 of the Administrative Review Law (735 ILCS 5/3—111(a)(5) (West 2004)) empowers the circuit court "to affirm or reverse the [administrative] decision in whole or in part." In the present case, the circuit court determined that DHCFS incorrectly concluded that the plaintiff was ineligible for CILA services because he did not require cognitive-related treatment. It does not automatically follow that the plaintiff is entitled to funding under CILA. In denying the plaintiff's application for CILA services, DHCFS concluded only that the plaintiff failed to show that he needed cognitive-related treatment. It did not need to decide, for example, the plaintiff's priority, and thus the circuit court exceeded its authority in directing the defendants to fund in-home CILA services for the plaintiff. See *Sahara Coal Co. v. Department of Mines & Minerals*, 103 Ill. App. 3d 115, 125 (1981). Accordingly, the circuit court exceeded the scope of its administrative review. We therefore affirm the circuit court's finding that the defendant was eligible for CILA services, in that the defendants incorrectly concluded that the plaintiff was not in need of active treatment, but we vacate that portion of the circuit court's order requiring that the plaintiff be provided in-home CILA services in an amount appropriate to meet his needs.

## CONCLUSION

For the foregoing reasons, we affirm that portion of the circuit court's decision reversing the defendants' decision that the plaintiff was not in need of active treatment and therefore not eligible for CILA services. We vacate that portion of the circuit court's order requiring that the plaintiff be provided in-home CILA services in an amount appropriate to meet his needs.

Affirmed in part and vacated in part.

GOLDENHERSH and SPOMER, JJ., concur.