PAMELA MALINOWSKI, Plaintiff-Appellant, v. THE COOK COUNTY SHERIFF'S MERIT BOARD *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—08—1828

Opinion filed October 29, 2009.

Kenneth N. Flaxman, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Lisa M. Meador, and Paul A. Castiglione, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE NEVILLE delivered the opinion of the court:

Plaintiff, Pamela Malinowski, appeals from an order of the circuit court confirming the order of the Cook County Sheriff's Merit Board (Board) discharging her from employment by the sheriff of Cook County (Sheriff). On appeal, plaintiff contends that the Sheriff had no rule or policy requiring her to perform the acts that she was accused of failing to perform. She also contends that the Board's findings were contrary to the manifest weight of the evidence.

Plaintiff had been employed by the Sheriff as a correctional officer since September 1985. In July 2006, the Sheriff filed a complaint with the Board seeking plaintiff's termination. The Sheriff alleged that, on February 10, 2006, plaintiff was guarding a "sallyport" or vehicle gate at the jail when she failed to follow the procedures set forth in a particular order (Post Order 2014 or the Post Order) regarding the control of incoming and outgoing vehicles. Specifically, the Sheriff alleged, plaintiff failed to search a vehicle departing the jail by her sallyport, resulting in the escape of a jail inmate. The complaint alleged that these acts violated the Sheriff's general orders regarding negligence leading to an escape and a failure to comply with the Sheriff's written procedures and verbal orders.

Plaintiff's case was consolidated for hearing with the cases against two other correctional officers, Noel Rivera and Darin Angel, arising out of the same escape on February 10, 2006. (We shall refer to plaintiff, Rivera, and Angel collectively as respondents.) The Board held its hearing in February 2007.

The evidence at the hearing regarding Rivera, from witnesses for the Sheriff and respondents, showed that Rivera was assigned on the day of the escape to the holding area of Division 11 of the jail, housing both convicted inmates and those awaiting trial. The holding area is the entrance to the division, consisting of several holding cells and an office or guard post, and it is the duty of officers assigned there to keep track of the flow of inmates between the division and the rest of the jail and to maintain a tally of the inmates in the division. The holding area is hectic and was particularly so on the day in question. On the day of the escape, the holding area was staffed by one officer, but this was later changed to two officers and the presence of a supervisor during deliveries. Inmates were employed in the division to perform tasks such as cleaning, but the superintendent of the division ordered the firing of all inmate workers on the day before the escape.

On the day of the escape, a correctional officer brought inmate Warren Mathis to the holding area to clean it, handing Mathis over to Rivera. Mathis was cleaning the holding area when Rivera last noticed him at about 10 a.m. When correctional officer Mark Tellado relieved Rivera for his lunch break at about 11:40 a.m., Rivera briefed Tellado but failed to mention that Mathis was working in the holding area. A short time later, Tellado noticed an inmate's personal items but no inmate. After calling Rivera to learn of Mathis's assignment to the holding area, and after a brief search, Tellado reported Mathis's escape. When Mathis was captured the next day, well outside the jail, he told investigators that he hid in a laundry basket and left the jail in a laundry truck.

The undisputed evidence at the hearing also showed that plaintiff and Angel were assigned to the rear sallyport of Division 11 on the day in question.

Rene Ramirez and Santiago Lopez testified that they were the driver and assistant, respectively, of the laundry truck on the day in question, arriving at the jail at 10:51 a.m., leaving at 10:58 a.m., and returning directly to the laundry. They delivered two carts of clean laundry and picked up two carts of dirty laundry, each wheeled cart being about 5 feet high, 5 feet long and about 3½ feet wide. The roof of the truck was about 2½ feet from the top of the carts. Ramirez and Lopez personally moved the carts onto and off of the truck. As they left the jail, they entered the sallyport, the interior door was closed behind them, and the truck was inspected. On the day in question, Ramirez saw only plaintiff inside the sallyport. From his vantage point at the rear of the truck, having opened the rear gate, Ramirez did not see anyone enter the back or cargo compartment of the truck and could not see the rest of the inspection. Lopez similarly testified that the officer who inspected the truck on the day in question looked inside the truck but did not enter. Ramirez stated that sometimes only one officer performed the inspection, that for a long time inspection of the inside of the truck was visual, and that it was not the procedure at the sallyports to look inside the carts.

Ronald Gaines testified that he investigated the escape incident for the Sheriff's internal affairs office. Gaines interviewed Angel, who stated that his duty at the sallyport was to search vehicles entering and exiting the sallyport. He inspected the laundry truck in question, searching the cab and undercarriage, looking into the cargo compartment of the truck, and checking the identification of the driver and helper. Because there was only about a six-inch gap between the laundry baskets and the roof of the truck, Angel could not enter the rear of the truck or search inside the baskets. Angel told Gaines that

he relied to some degree on searches by the guards loading the truck and that he lacked the personnel to unload the truck and dump out each basket. Gaines concluded from his investigation that Angel had violated the Sheriff's general order against negligence leading to an escape. Gaines explained that the Post Order provided that vehicles departing via the sallyport are to be halted and searched thoroughly.

Gaines also interviewed plaintiff, who stated that her duty at the sallyport on the day in question was to admit vehicles into and out of the sallyport, searching the vehicles and occupants for contraband and then giving their identification information to the officer in the holding area. For the laundry truck in question, she logged the identification information of the truck's driver and helper and watched Rivera checking the cab and undercarriage of the truck. Plaintiff did not search the truck, though the Post Order required officers posted to the sallyport to do so. From his investigation, Gaines concluded that plaintiff violated the Sheriff's general order against negligence leading to an escape by failing to search the laundry truck.

On cross-examination, Gaines testified that the Post Order provided in relevant part that officers posted to the sallyport must "[i]nspect vehicle[s] for weapons, drugs, and/or any contraband that may be forbidden," that "[d]eparting vehicles will be halted and searched thoroughly," and that the "[s]earch shall include trunk, under hood, glove box[,] inside semi-trailers and under vehicle body frame." It did not expressly include searching for escaping inmates, nor did it expressly require officers to remove the contents from vehicles. Also, the Post Order did not specify the duties of individual officers when more than one officer was assigned to the sallyport.

Captain Elvis Slaughter testified in relevant part that, several months after the escape, he was a watch commander in "exterior operations," or security for the external exits of the jail including the sallyport in question. Slaughter explained that officers at the sallyport are expected to enter the laundry truck and physically search the baskets for inmates, and he believed "that has always been like that" under the directive to search inside vehicles.

Corespondent Darin Angel testified that he and plaintiff had the same or "shared" duties on the day in question, including maintaining a log of movements into and out of the sallyport as well as searching vehicles entering and exiting the sallyport. One officer would maintain the log while the other would conduct the inspections, and on the day in question, plaintiff did the former and Angel the latter. When the laundry truck arrived at the division on that day, Angel opened the outer door, closed it once the truck entered, checked the driver's identification, gave it to plaintiff to be logged, and looked into

the cab, at the underside, and into the rear of the truck. Angel then opened the inner door and admitted the truck into the division. When the truck left a short time later, Angel opened the inner door, the truck drove into the sallyport, and the driver and assistant exited the truck. Angel then looked inside the cab, under the truck, and inside the rear of the truck.

Angel did not enter the truck to look inside the carts because they were too tall to look into. In about five years of service, Angel always searched trucks the same way and was never reprimanded for his method though supervisors had been present for some of the searches. The sallyport officers were not issued tools or equipment to conduct searches despite several requests for such equipment by Angel. After the escape, broomsticks were issued to sallyport officers to check inside the laundry baskets. In addition, after the escape, Angel was told by supervisors that he could not empty out the laundry baskets. Angel admitted that the Post Order does not divide duties between sallyport officers when there is more than one. Angel also admitted that the laundry truck could not leave the sallyport until he allowed it and thus he could have told the driver to remove and open the baskets.

Plaintiff testified that she had searched the laundry truck before the day in question by looking into the cab, at the underside, and into the rear of the truck. She conducted the search in this manner because this is the way she was taught by her predecessor. Though she had searched trucks in this manner with supervisors present, she had never been disciplined as a result. She was not issued tools or equipment to conduct searches despite making several requests.

On the day in question, plaintiff saw Angel inspect the laundry truck in the same manner. Plaintiff believed that the Sheriff's rules and orders did not require her to participate in the search. Plaintiff explained the statement to Investigator Gaines that sallyport officers rely on other officers to secure the baskets: officers inside the division supervise inmate workers and the loading of trucks and are supposed to be aware of the inmate count.

The hearing ended with closing arguments. On August 22, 2007, the Board issued an order finding that plaintiff had violated the specified regulations and ordered that she be discharged from employment by the Sheriff effective July 5, 2006. (The Board also discharged corespondents.) Specifically, the Board found that plaintiff "by her own admission *** did not conduct a search of the vehicle, *** admitt[ing] she never left the guard shack. By leaving the inspection of all vehicles to be the sole responsibility of her partner, she does so at her own peril." Plaintiff "failed to follow the proper procedures as set forth in Post Order #2014 to maintain outside security *** and to

control incoming and outgoing movement of vehicles, and [she] failed to search a departing vehicle," and an inmate escaped as a result. The Board expressly found plaintiff's testimony not credible.

Plaintiff timely petitioned the circuit court for administrative review of the Board's decision, alleging that it was arbitrary and capricious, was against the manifest weight of the evidence, and lacked a substantial foundation in evidence. Following briefs by the parties, the court issued an order on July 2, 2008, confirming the Board's decision. This appeal timely followed.

On appeal, plaintiff contends that there was no rule or order of the Sheriff requiring her to search the laundry baskets in trucks leaving the jail. She also contends that the Board's finding that she could have prevented the escape was contrary to the manifest weight of the evidence.

A Sheriff's correctional officer may not "be removed, demoted or suspended except for cause, upon written charges filed with the Board by the Sheriff and a hearing before the Board thereon," where the officer has the right to present evidence and argument. 55 ILCS 5/3—7012 (West 2006). "Cause" is a substantial shortcoming that renders continuance in office detrimental to the discipline and efficiency of the service, or something that the law and sound public opinion recognize as good cause for no longer occupying office. *Ehlers v. Jackson County Sheriff's Merit Comm'n*, 183 Ill. 2d 83, 89 (1998); *Reichert v. Board of Fire & Police Commissioners*, 388 Ill. App. 3d 834, 842-43 (2009).

It is axiomatic that an officer's violation of a single rule may constitute a sufficient basis for discharge. *Siwek v. Police Board*, 374 Ill. App. 3d 735, 738 (2007). An agency's rules and regulations are subject to the rules of statutory construction. *Biekert v. Maram*, 388 Ill. App. 3d 1114, 1118-19 (2009). Legislative intent is best determined from the language of the statute or regulation itself, which should be interpreted as a whole and given its plain and ordinary meaning. *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 216-17 (2008); *Biekert*, 388 Ill. App. 3d at 1119. A statute or regulation should be interpreted in light of the purpose for the law, the problems to be remedied, and the objects and purposes sought. *Cinkus*, 228 Ill. 2d at 217.

We review the Board's decision rather than the decision of the circuit court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006); *Reichert*, 388 Ill. App 3d at 843. Our review of a discharge for cause has two stages: first, we review the Board's finding of guilt, reversing only if it was against the manifest weight of the evidence; then, we review the Board's finding that said guilt was a sufficient cause for discharge, reversing only if it was arbitrary and

unreasonable or was unrelated to the requirements of the service. *Ehlers*, 183 Ill. 2d at 89; *Reichert*, 388 Ill. App. 3d at 843. We do not reweigh the evidence or substitute our judgment for that of the Board, but instead affirm when the record contains evidence supporting the Board's decision. *Marconi*, 225 Ill. 2d at 534; *Siwek*, 374 Ill. App. 3d at 738. Similarly, the Board need not give mitigating evidence such weight that it overcomes its discharge decision, and a discharge in a case where mitigating evidence was presented is not *per se* arbitrary or unreasonable. *Siwek*, 374 Ill. App. 3d at 738-39.

■ Here, we must first address whether the Sheriff had a rule or order requiring plaintiff to search the laundry baskets in trucks leaving the jail. We conclude that there was such an order. The Post Order states that the responsibility of sallyport officers, a group including plaintiff on the day in question, is "to maintain outside security for Division XI and to control incoming and outgoing movement of buses and trucks." The Post Order directs officers that "[d]eparting vehicles will be halted and searched thoroughly" and that the "search shall include trunk, under hood, glove box[,] inside semi-trailers and under vehicle body frame." The general directive to search thoroughly, by itself at least arguably inconsistent with a mere look into the cargo compartment of the laundry truck from outside, was made clearer by the instruction to search *inside* semitrailers.

Plaintiff points to evidence that visual rather than physical searches of the inside of trucks were routine, corroborating her testimony and that of corespondent Angel with that of truck driver Ramirez. However, Captain Slaughter was familiar with sallyport post orders and believed that interior physical searches were always required. Moreover, repeated or even routine violation of an order does not negate the order. See *Harris v. Union Stock Yard & Transit Co. of Chicago*, 29 Ill. App. 3d 1072, 1081-82 (1975) ("the mere fact that a course of conduct is common practice does not ipso facto establish that it is nonnegligent conduct").

Plaintiff also points out that the Post Order does not require both officers posted to a sallyport to participate in searches. However, the Post Order makes no such distinction because it applies to the post, and thus to any and all officers assigned to the post. Plaintiff argues that she and Angel lacked the tools to look or reach inside the laundry baskets and were forbidden to remove the laundry from the baskets. However, the only evidence for the latter assertion was Angel's testimony that he was told so after the escape. In his statement to Investigator Gaines, Angel merely stated that he lacked the personnel to empty the baskets. Angel had additional personnel at hand on the day in question—the truck crew to remove and open the baskets, and plaintiff to search—but Angel did not request such assistance.

We also conclude that the Board's finding that plaintiff could have prevented the escape was not against the manifest weight of the evidence. There were clearly factors, including but not necessarily limited to corespondent Rivera's negligence, that resulted in inmate Mathis being in the laundry basket in the back of the truck before that truck reached the sallyport to exit the jail. However, plaintiff and Angel were assigned to the sallyport, where they were directed to thoroughly search all outgoing vehicles, because the sallyport was the last line of defense against escapes. The Board's implicit conclusion that Angel (and thus plaintiff) could have entered the truck and searched the baskets was supported by Ramirez's testimony that the baskets were about five feet tall and that there was over two feet of space above the baskets inside the truck. Also, as stated above, the evidence supports a conclusion that plaintiff and Angel, with aid from the laundry truck crew, could have removed laundry from the baskets.

In summary, we conclude that plaintiff violated a rule of the Sheriff when she failed to inspect the inside of the laundry truck, and that the Board's findings were not contrary to the manifest weight of the evidence. Accordingly, the judgment of the circuit court is affirmed and the order of the Board is confirmed.

Circuit court judgment affirmed; Board's order confirmed.

GALLAGHER and STEELE, JJ., concur.