Docket No. 105131.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

---

THE PEOPLE *ex rel.* LISA MADIGAN, Appellant, v. ILLINOIS
COMMERCE COMMISSION, Appellee.

*Opinion filed November 20, 2008.*

JUSTICE GARMAN delivered the judgment of the court, with
opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride,
Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Plaintiff-Appellant, the Attorney General, electronically
transmitted an application for rehearing with the Illinois Commerce
Commission after the close of business on the application's due date.
The Commission accepted the application, but ultimately denied
rehearing. The Attorney General then appealed to the Appellate
Court, First District. The appellate court transferred the appeal to the
Fourth District, which then dismissed the appeal. The Fourth District
relied on the Commission's regulations to determine that the Attorney
General's application for rehearing was not timely, and therefore
concluded the court lacked jurisdiction. The Attorney General
petitioned this court for leave to appeal the dismissal, which we
allowed pursuant to Rule 315 (210 Ill. 2d R. 315(a)). This case

presents the question whether the Commission's regulations require an electronic filing (e-filing) to be transmitted before the Commission's office closes in order to be timely filed and vest the appellate court with jurisdiction to hear a subsequent appeal.

## BACKGROUND

On November 10, 2005, Illinois Bell Telephone Company (referred to by both parties as AT&T) requested the Commission to reclassify certain residential local services as "competitive." The details of the underlying request are not necessary to understand the question before this court, as the question here is purely procedural and does not require a discussion on the merits. It is sufficient to note the Commission had jurisdiction over the matter pursuant to the Public Utilities Act (220 ILCS 5/13–502 (West 2006)). On August 30, 2006, after discovery and hearings, the Commission issued an order partially approving AT&T's request (original order). That document was dated August 30 and served on the parties the following day. That document was titled "Post Exceptions Proposed Order."

On September 7, the Commission served a second document on the parties. The second document was also dated August 30. Both parties acknowledge that the sole difference between the original order and the September 7 document is that the words "Post Exceptions Proposed" were removed from the title so that the title of the second document contained only the word "Order."

The Commission's docket describes both documents. It describes the original order as a "Final Order." The docket describes the September 7 document as a "Corrected Final Order." The docket entry for both documents is dated August 30. The docket lists no other order between August 30 and September 7.

Pursuant to the Public Utilities Act (220 ILCS 5/10–113(a) (West 2006)) all parties had the opportunity to file an application for rehearing within 30 days of the Commission's order.

The parties dispute whether the due date for filing was October 2, 30 days from the service of the Commission's original order dated

August 30, or October 10, 30 days from the Commission's "corrected order" served September 7.[1]

The parties also dispute whether the Attorney General's application for rehearing was timely filed on October 2. Various Commission documents indicate different filing dates for the Attorney General's application. The Commission's docket entry lists a "filed date" of October 3, 2006. The administrative law judge's recommendation of October 3, 2006, states the Attorney General's application as filed on October 2. The order denying the Attorney General's application for rehearing indicates an October 3 filing.

Although the parties dispute the actual filing date, both parties acknowledge the date and times at which they each transmitted their applications to the Commission. AT&T, using the Commission's e-filing system, transmitted its application at 4:04 p.m. on September 29, 2006. The Attorney General's office transmitted its application for rehearing, at issue in this case, at 5:34 p.m. on October 2, 2006.

The Commission accepted and considered both the Attorney General's and AT&T's applications for rehearing and denied them both on October 12. On October 13, AT&T submitted a petition for review with the Appellate Court, Fourth District, and a second petition for review with that same court on October 23. The Fourth District consolidated those appeals. On October 24 the Attorney General submitted its own petition for review with the Appellate Court, First District. AT&T moved to transfer the Attorney General's appeal to the Fourth District or, in the alternative, to dismiss the Attorney General's appeal based on its untimely filing of its application for rehearing. The cause was transferred to the Fourth District, which dismissed AT&T's appeals as premature. The Fourth District also dismissed the Attorney General's appeal for lack of jurisdiction, because it determined that the Attorney General's

---

[1]As this court held in *Illini Coach Co. v. Illinois Greyhound Lines, Inc.*, 403 Ill. 21 (1949), the 30-day period is measured in calendar days. Here, the thirtieth day fell on a weekend, and so the following Monday, October 2, became the filing deadline. October 7, the thirtieth day from the second order, also fell on a weekend.

application for rehearing was not timely filed. The Attorney General then sought leave to appeal in this court.

## ANALYSIS

### I. Effect of the Commission's September 7, 2006, Order

We first consider the Attorney General's argument that its application was timely because the order served on September 7 constituted an amended order that reset the time period for filing a petition for rehearing.

The Attorney General contends that the Public Utilities Act applies to any and all alterations in a Commission order. The Attorney General cites section 10–113, which authorizes the Commission to "rescind, alter or amend" any order or decision made by it. 220 ILCS 5/10–113 (West 2006). The Act provides that any alteration or amendment shall have the "same effect" as the Commission's original order. We review questions of statutory interpretation *de novo. Wisniewski v. Kownacki*, 221 Ill. 2d 453, 460 (2006).

Although the issue is one of first impression for this court, the United States Supreme Court has considered this precise issue in *Federal Trade Comm'n v. Minneapolis-Honeywell Regulator Co.*, 344 U.S. 206, 97 L. Ed. 245, 73 S. Ct. 245 (1952).

In *Minneapolis-Honeywell* a dispute arose over whether the appellant timely filed a petition for writ of *certiorari*. The appellant claimed, as in this case, that a second order issued two months after the first renewed the time period from which the parties could petition for *certiorari*. The appellate court had made no substantive change to the original order and, instead, made a change to the title of the document. The first document was labeled "Decree," while the second document was labeled "Final Decree."

In answering this question, the Supreme Court recognized that "the mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought." *Minneapolis-Honeywell*, 344 U.S. at 211, 97 L. Ed. at 252, 73 S. Ct. at 248. "Only when the lower court changes matters of substance, or resolves a genuine ambiguity, in a judgment previously rendered should the period *** begin to run anew."

-4-

*Minneapolis-Honeywell*, 344 U.S. at 211-12, 97 L. Ed. at 252, 73 S. Ct. at 248-29. The Court also noted the test is a practical one. "The question is whether the lower court *** has disturbed or revised legal rights and obligations which, by its prior judgment, had been plainly and properly settled with finality." *Minneapolis-Honeywell*, 344 U.S. at 212, 97 L. Ed. at 252, 73 S. Ct. at 249. Although *Minneapolis-Honeywell* does not bind this court, we find its reasoning sound and persuasive.

The factual similarity between *Minneapolis-Honeywell* and the present case is apparent. The only change to the Commission's August 30 order was removal of three words from the document's title. Rather than read "Order" the Commission's original order read "Post Exceptions Proposed Order." As the Court concluded in *Minneapolis-Honeywell*, "the question of whether the time *** was to be enlarged cannot turn on the adjective which the court below chose to use in the caption of its second judgment," when the first judgment "was for all purposes final." *Minneapolis-Honeywell*, 344 U.S. at 212-13, 97 L. Ed. at 252, 73 S. Ct. at 249.

Here, the record and argument before us indicate that the August 30 order was for all purposes final. The September 7 document did not disturb or revise either party's legal rights and obligations that had been plainly and properly settled with finality. The parties understood the August 30 order to be a final order. Indeed, at oral argument, counsel for the Attorney General acknowledged that the Attorney General had been proceeding with the original order in mind, and suggested that an application for rehearing based on either order would be proper.

Rather than affect the parties' legal rights, the alteration here was *de minimus*, as removing three words from the document's heading merely corrected a trivial, clerical error. As such, the change did not serve to extend the parties' opportunity to file an application for rehearing.

We further conclude that section 10–113 does not change this analysis. Section 10–113 is a formal procedure the Commission must follow if it intends to rescind, alter or amend one of its decisions. However, the record indicates that the Commission did not rely on section 10–113 when it served the September 7 document. Although served on September 7, the second document was also dated August

30. The Commission's e-docket shows that the two orders were both entered on August 30, 2006. The docket lists the first as a "Final Order," and the second as a "Corrected Final Order." The docket likewise contains no entry of an order on either September 6 or 7.

Further, nothing indicates the Commission intended to rely on its statutory authority to rescind or amend its decision. Section 10–113 requires that the Commission notify the public utility, and provide the utility an opportunity to be heard, if it decides to rescind or amend an order. Here, the Commission did not serve notice, nor did it provide an opportunity to be heard.

The legislature, in enacting section 10–113, intended to provide for notice and opportunity to the parties in the event that the Commission decided to reconsider its decision. The procedure ensures that any amendment to a Commission decision will not be undertaken without serious consideration. It is equally evident that the legislature did not intend to require notice, and an opportunity to be heard, for mere clerical mistakes that do not materially affect the decision.

Section 10–113 cannot be read to apply to nonsubstantive corrections to the Commission's orders. Therefore, we hold that the Commission's September 7 order did not extend the time in which the Attorney General could file its application for rehearing.

## II. Whether E-Filing Outside Business Hours Results in an Untimely Application

We next turn to whether the Attorney General's electronic transmission of an application for rehearing, transmitted at 5:34 p.m. on the last day of filing, was timely filed, and therefore whether the appellate court has jurisdiction over the Attorney General's appeal. The timeliness of the Attorney General's application for rehearing turns on whether the Commission's rules require filing during business hours.

Administrative rules and regulations have the force and effect of law, and must be construed under the same standards which govern the construction of statutes. *Union Electric Co. v. Department of Revenue*, 136 Ill. 2d 385 (1990). The interpretation of a statute is a

question of law, which we review *de novo. Kownacki*, 221 Ill. 2d at 460. Thus, *de novo* review is also required here.

In interpreting an agency regulation, our primary objective is to ascertain and give effect to the intent of the agency, in this case, the Commission. *MD Electrical Contractors, Inc. v. Abrams*, 228 Ill. 2d 281, 287 (2008). The surest and most reliable indicator of intent is the language of the regulation itself. *MD Electrical*, 228 Ill. 2d at 287. In determining the plain meaning, we consider the regulation in its entirety, keeping in mind the subject it addresses and the apparent intent of the Commission in enacting it. *MD Electrical*, 228 Ill.2d at 287. Where the language of the regulation is clear and unambiguous, we must apply it as written, without resort to extrinsic aids of statutory construction. *MD Electrical*, 228 Ill.2d at 287-88.

The regulation at issue states that "[t]he filing of an electronic document is effective upon acceptance of the complete document and, if applicable, any required original paper verification or affidavit pages by the Chief Clerk of the Commission." 83 Ill. Adm. Code §200.1040(b) (added at 24 Ill. Reg. 16019, eff. October 15, 2000). The Attorney General argues that the Commission's regulation does not require filing during business hours. AT&T contends that the regulation requires physical acceptance of any electronic filing. AT&T further reasons that there can be no acceptance if the chief clerk or his personnel are not present in the building. AT&T therefore concludes that electronic documents must be filed during business hours when Commission personnel are present.

Looking first to the plain and ordinary meaning of the language, we note that acceptance means "favorable reception," or "the act of accepting." Webster's Third New International Dictionary 11 (2002). Accept means "to receive with assent." Webster's Third New International Dictionary 10 (2002). These definitions suggest that acceptance requires something more than mere transmittal, but the word acceptance alone does not provide guidance as to how a document may be accepted.

However, the word acceptance does not stand alone. The regulation, read in its entirety, establishes that electronic documents may be accepted "by the Chief Clerk of the Commission." Neither party argues that "Chief Clerk," as used in this regulation, means *only* the chief clerk. AT&T acknowledges that the regulation extends at

least to the chief clerk's personnel, who may also accept e-filings. This position reflects the reality of modern administrative agencies that department heads must necessarily delegate certain authority and responsibility in order for the agency to function properly. Both parties agree that the intent of the regulation was not to require the chief clerk to personally accept every e-filing.

Because "Chief Clerk" cannot be read literally, the language of the statute gives rise to an ambiguity as to who, or what, may "accept" electronic filings. An ambiguity exists where the regulation is capable of more than one reasonable interpretation. See *General Motors Corp. v. State of Illinois Motor Vehicle Review Board*, 224 Ill. 2d 1, 13 (2007). AT&T reasonably interprets "Chief Clerk" to mean the chief clerk or a member of his staff. However, interpreting chief clerk to refer to the office of the chief clerk, and not to any particular person, an interpretation more in line with that of the Attorney General, is also reasonable. Implementing an e-filing system, like delegating responsibility to the chief clerk's staff members, serves the same purpose of promoting efficiency, and reducing the burden on the Commission's employees. Under that interpretation, the Commission e-docket system is authorized to accept filings from the various parties having business with the Commission. We find the regulation ambiguous because on its face it contains no indication whether filing requires actual physical acceptance by a human being in the chief clerk's office.

If the language of a particular regulation is ambiguous, we then look to the purpose and necessity of the regulation, the evils sought to be remedied and the goals to be achieved. *Alvarez v. Pappas*, 229 Ill. 2d 217, 231 (2008). In doing so, we view all provisions of an enactment as a whole. *J.S.A. v. M.H.*, 224 Ill. 2d 182 (2007). In this case we look to the Commission's formal rules for electronic filing, enacted on October 15, 2000, in their entirety. When there is still doubt as to a regulation's meaning, we also properly consider extrinsic matters in order to determine legislative intent. *Land v. Board of Education of the City of Chicago*, 202 Ill. 2d 414, 426 (2002).

In its "Overview of Electronic Filing," the Commission affirms its commitment "to facilitating the filing, distributing, and accessing of documents electronically," subject to the Commission's Rules of

Practice. 83 Ill. Adm. Code §200.1000 (added at 24 Ill. Reg. 16019, eff. October 15, 2000). The Commission allows all documents initiating a proceeding, or filed in a docketed proceeding, to be filed electronically. 83 Ill. Adm. Code §200.1045 (added at 24 Ill. Reg. 16019, eff. October 15, 2000). The Commission's rules also provide for service by electronic means. 83 Ill. Adm. Code §200.1050 (added at 24 Ill. Reg. 16019, eff. October 15, 2000).

The rest of the Commission's regulations reinforce this overall purpose of facilitating e-filing. For example, the Commission's e-filing system accepts a variety of document formats. Although the Commission encourages parties to submit documents in PDF format, it will accept both Microsoft Word and Corel WordPerfect documents, as well as ASCII text. 83 Ill. Adm. Code §200.1010 (added at 24 Ill. Reg. 16019, eff. October 15, 2000). The Commission also accepts two spreadsheet formats. 83 Ill. Adm. Code §200.1010 (added at 24 Ill. Reg. 16019, eff. October 16, 2000).

Thus, while the Commission's rules do not require parties to file electronically, the rules reflect the Commission's intent to encourage, rather than restrict, the practice. The Commission's rules do contain restrictions on electronic filing. For example, only registered account holders may use the system, and only members of the service list for a docketed case may file documents electronically in that case. 83 Ill. Adm. Code §200.1020 (added at 24 Ill. Reg. 16019, eff. October 15, 2000). However, these practices ultimately encourage electronic filing by instilling confidence in the security and efficiency of the system. In light of the regulations' emphasis on facilitating e-filing, we cannot say that the regulations themselves indicate an intent to restrict e-filing to business hours.

Still, AT&T suggests that the disclaimer printed on the Attorney General's electronic receipt confirming the transmission of its application for rehearing reveals the intent of the Commission to restrict filing to actual office hours because a person must physically review the filing. The disclaimer reads:

> "Electronic file(s) are not officially filed with the Illinois Commerce Commission until reviewed for compliance with Commission rules and accepted by Commission personnel."

The disclaimer refers to acceptance by Commission personnel. However, this statement is equally applicable to in-person filings and mail filings. Neither are officially filed until reviewed for compliance. What is different between in-person and mail filings is when they are deemed filed. While both must be reviewed for compliance before being officially filed, in-person filings must be made during business hours, while mail filings do not. The disclaimer therefore says nothing about whether e-filings must be transmitted during business hours. Instead, the disclaimer indicates that a document will not be officially filed at all if it does not comply with Commission rules. Because the disclaimer does not suggest that a document transmitted after business hours will be deemed filed the following day, the disclaimer cannot provide guidance as to the Commission's intent.

Even if the regulation and disclaimer could be interpreted to require actual physical acceptance, it would prove to be an unworkable standard. The burden of timely filing rests on parties to an action, who are responsible for the proper formatting and delivery of filings. Agencies and courts need not issue reminders. Along with the parties' responsibility to adhere to deadlines, however, comes the assurance that a filing will be deemed filed when submitted, even if not checked for compliance until later. *In re Estate of Davison*, 102 Ill. App. 3d 644, 645 (1981) ("Delivery alone has been held to constitute filing since the person filing has no control over the officer who receives documents"), citing *Dowie v. Chicago, Waukegan & North Shore Ry. Co.*, 214 Ill. 49 (1905).

Requiring physical acceptance undermines the reasoning in *Dowie*, because e-filers have no control over the physical acceptance of documents by Commission personnel. A physical-acceptance standard gives rise to uncertainty as to whether an electronically submitted document has been filed. We note in particular the example raised by the Attorney General, of a filing transmitted at 4:59 p.m. If Commission personnel are unable to review and accept that filing until the following morning, under a physical-acceptance rule the document will not be filed until that following morning. Similarly, a brief filed at 5:01 p.m. and reviewed by Commission personnel working late would be deemed filed that same day. The physical-acceptance standard eliminates the parties' ability to know, in

-10-

advance, what time their documents will be deemed filed, as they have no control over the chief clerk's personnel.

Uncertainty of that kind does not occur with either in-person filings or mail filings. In-person submissions are officially filed when received at the principal office of the Commission. 83 Ill. Adm. Code §200.70(a) (amended at 24 Ill. Reg. 16019, eff. October 15, 2000). Filing by mail is official based on the cancellation mark of the United States Postal Service, or upon delivery to a private express courier service. 83 Ill. Adm. Code §200.70(a)(1) (amended at 24 Ill. Reg. 16019, eff. October 15, 2000). The Commission's regulation and disclaimer, read literally to require physical acceptance of an electronic filing, would place e-filers at a comparative disadvantage.

AT&T suggests that using the Commission's business hours sufficiently reduces the potential for uncertainty. We agree with AT&T that imposing a 5 p.m. deadline is perfectly compatible with e-filing, and acknowledge AT&T's extensive list of other agencies and jurisdictions that have imposed rules and regulations providing for such a deadline. However, in the absence of a specific regulation, we cannot read a 5 p.m. deadline into the Commission's rules. Indeed, the extent to which other jurisdictions have enacted business hours deadlines also serves to underscore the Commission's own decision not to issue an explicit rule. Rather, the Commission chose the word "acceptance," which, standing alone, does not fairly imply a 5 p.m. deadline.

AT&T's interpretation requiring physical acceptance would undermine the expressed intent of the Commission to facilitate and encourage the use of electronic filing. We do not depart from the plain language of the regulation by reading into it exceptions, limitations, or conditions that conflict with the expressed intent. See *Rosewood Care Center, Inc. v. Caterpillar, Inc.*, 226 Ill. 2d 559, 567 (2007).

The entirety of the Commission's enactment seeks to expand, rather than limit, the ability of parties to make use of the e-docket system. Insisting on a deadline of 5 p.m. would have the opposite effect, limiting the use of e-filing. When faced with a tight deadline, a 5 p.m. rule would encourage attorneys to print, and mail, large documents rather than use the efficient and economical method of electronic filing that the Commission's rules promote.

Accordingly, we hold that the Commission's regulations do not require that electronic documents to be transmitted by 5 p.m. on their due date. So long as the document is transmitted prior to midnight of the due date, and otherwise complete under the Commission's rules, that document is timely filed, and the appellate court properly has jurisdiction over subsequent appeals.

### III. Appropriate Court on Remand

The Attorney General asks this court to remand this appeal to the First District, as the First District is the court that first acquired jurisdiction of its appeal under the Public Utilities Act. AT&T argues that the Attorney General has forfeited this issue because it was not raised in the Attorney General's petition for leave to appeal.

The Attorney General asserts it has previously raised the argument that the First District first acquired jurisdiction of this appeal. Specifically, the Attorney General raised the argument in defending against AT&T's original motion to transfer to the Fourth District, in the Attorney General's motion to dismiss AT&T's appeals, and in the Attorney General's petition for rehearing in the Fourth District.

However, forfeiture is ultimately irrelevant, as the issue in this case is one of jurisdiction, which any reviewing court has an obligation to consider. *Franson v. Micelli*, 172 Ill. 2d 352, 355 (1996).

The appellate court has jurisdiction to review administrative decisions only as provided by law. Ill. Const. 1970, art. VI, §6; *Town & Country Utilities, Inc. v. Illinois Pollution Control Board*, 225 Ill. 2d 103, 121-22 (2007). When the appellate court undertakes direct review of an administrative decision, it exercises special statutory jurisdiction. *Town & Country Utilities*, 225 Ill. 2d at 122. Special statutory jurisdiction is limited to the language of the act conferring it. *Town & Country Utilities*, 255 Ill. 2d at 122, quoting *Collinsville Community Unit School District No. 10 v. Regional Board of School Trustees*, 218 Ill. 2d 175, 182 (2006), quoting *Fredman Brothers Furniture v. Department of Revenue*, 109 Ill. 2d 202, 210 (1985). Thus, we are presented with the question whether the Public Utilities Act has conferred jurisdiction on either the First or Fourth District.

-12-

The Public Utilities Act specifically requires appeals to be brought in particular judicial districts. The Act provides that parties "may appeal to the appellate court of the judicial district in which the subject matter of the hearing is situated." 220 ILCS 5/10–201(a) (West 2006). The Act further states:

> "The court first acquiring jurisdiction of any appeal from any *** order *** shall have and retain jurisdiction of such appeal and of all further appeals from the same *** order *** until such appeal is disposed of in such appellate court. 220 ILCS 5/10–201 (West 2006).

The Public Utilities Act thus limits the appellate court's special statutory jurisdiction to districts that encompass the matter under review by the Commission.

This court has recognized that it is the notice of appeal which, when timely filed with the trial court, vests jurisdiction with the appellate court. *In re Tekela*, 202 Ill. 2d 282, 288 (2002). *Berg v. Allied Security, Inc.*, 193 Ill. 2d 186, 189 (2000). 155 Ill. 2d R. 301. In the context of administrative review, the petition for review submitted to the appellate court serves the function of the notice of appeal. 155 Ill. 2d R. 335, Committee Comments, at cxxxii; *ESG Watts, Inc. v. Pollution Control Board*, 191 Ill. 2d 26, 31 (2000). Therefore, for the appellate court to acquire jurisdiction, the petition for review must be timely filed. In this case, the Attorney General acknowledges that AT&T first filed its petitions for review in the Fourth District. Still, the Attorney General contends that because those petitions were not timely filed, jurisdiction never vested with the Fourth District.

We note neither the First nor the Fourth District has made a determination whether, under the Public Utilities Act, it "first acquir[ed] jurisdiction." The Fourth District merely concluded, in its dismissal of the Attorney General's appeal, that the Attorney General's petition for rehearing was not timely. The First District also declined to make a determination of its jurisdiction in transferring the Attorney General's appeal to the Fourth District. That court strongly emphasized it made no finding as to whether it or the Fourth District had jurisdiction over either of the parties' appeals. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 369 Ill. App. 3d 126, 127 (2006).

-13-

Nor did the appellate court make a determination as to whether the subject matter of the Commission's review was "situated" in the reviewing court's district. Because an appeal of a Commission decision is allowed by law only in those districts where the subject matter of the appeal is situated, the appellate court must meet that statutory requirement, even before it can determine which district first acquired jurisdiction. We note the Attorney General contends that the matter is situated in the First District, because the bulk of AT&T's affected customers are geographically located there, while AT&T asserts that its customers are also located in the Fourth District. The record before this court is not sufficiently developed to make that determination.

Thus, although we hold that the appellate court has jurisdiction over the Attorney General's appeal with respect to the timeliness of her application for rehearing with the Commission, we remand to the Fourth District with instruction to consider whether the subject matter of the Commission's order is situated in the First or the Fourth District, if either, and for a determination whether the First or the Fourth District first acquired jurisdiction over the Attorney General's appeal, pursuant to section 10–201(a).

Finally, we note that Supreme Court Rule 303(a)(2) (210 Ill. 2d R. 303) and Rule 335 (155 Ill. 2d R. 335) may be applicable to the question of jurisdiction. However, neither party has briefed the issue, and so we instruct the Fourth District to also consider its jurisdiction in light of Rules 303 and 335.

CONCLUSION

For the reasons stated, we hold that the Attorney General's application for rehearing was timely filed, and that the Fourth District did not lack jurisdiction on timeliness grounds. The judgment of the appellate court is reversed, and we remand the cause to the Fourth District for further proceedings.

*Appellate court judgment reversed;*
*cause remanded.*