NO. 4-06-1063          Filed 9/3/09

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS ex rel. LISA MADIGAN, Attorney General of the State of Illinois, | ) ) ) | Direct Administrative Review of the |
| Petitioner-Appellant, | ) | Illinois Commerce |
| v. | ) | Commission |
| THE ILLINOIS COMMERCE COMMISSION; ILLINOIS BELL TELEPHONE COMPANY; THE CITIZENS UTILITY BOARD; THE CITY OF CHICAGO; COOK COUNTY STATE'S ATTORNEY'S OFFICE; AARP ILLINOIS; GALLATIN RIVER COMMUNICATIONS LLC; TRUCOMM CORPORATION; and DATA NET SYSTEMS, | ) ) ) ) ) ) ) ) | No. 06-0027 |
| Respondents-Appellees. | ) | |

_____

JUSTICE KNECHT delivered the opinion of the court:

In November 2005, respondent Illinois Bell Telephone Company (Illinois Bell) filed tariffs with respondent Illinois Commerce Commission (Commission) reclassifying as competitive specific residential local services in MSA-1, an area encompassing Chicago and outlying areas. A number of entities, including the petitioner, the People of the State of Illinois ex rel. Attorney General Lisa Madigan, participated in the investigation of and hearings on Illinois Bell's reclassification. On August 30, 2006, the Commission issued its decision reclassifying Illinois Bell's residential local service for MSA-1 as competitive. The Commission also modified and adopted a joint proposal of Illinois Bell and the Citizens Utility Board (CUB), under which Illinois Bell agreed to certain rate limits.

Petitioner appeals the Commission's ruling. On appeal,

petitioner argues (1) the First District has exclusive jurisdiction to hear this appeal, (2) the Commission erred by reclassifying "measured" or "basic service" in MSA-1 as "competitive" under section 13-502 of the Public Utilities Act (Act) (220 ILCS 5/13-502 (West 2006)), and (3) the Commission lacked the authority to adopt the Illinois Bell-CUB proposal. We agree with petitioner's first argument and transfer this appeal to the First District.

## I. BACKGROUND

In November 2005, Illinois Bell filed tariffs declaring essentially all of its residential local services in MSA-1 competitive under section 13-502 of the Act (220 ILCS 5/13-502 (West 2004)). The services labeled competitive included residence network-access lines, residence usage services, call waiting, caller identification (caller ID), and directory-listing services. A consumer could purchase these services on an a la carte basis. Illinois Bell also reclassified as competitive a number of residential-service packages. We note the Commission approved the reclassification of the residential packages and petitioner did not appeal that ruling.

On January 11, 2006, the Commission initiated an investigation into Illinois Bell's reclassification of its residential local services. Illinois Bell's reclassification of those services, previously deemed noncompetitive, would allow Illinois Bell to "change its prices with fewer procedural obstacles and less scrutiny from the Commission." Illinois Bell Telephone Co. v. Illinois Commerce Comm'n, 282 Ill. App. 3d 672,

675, 669 N.E.2d 628, 630 (1996). A number of parties intervened, including petitioner, the City of Chicago, CUB, and AARP Illinois (AARP). In April 2006, the Commission held an evidentiary hearing on the matter. In May 2006, Illinois Bell and CUB filed their stipulation and joint proposal. Under this proposal, those parties agreed, in part, the residence local-exchange services in MSA-1 would be reclassified as competitive and Illinois Bell would cap or reduce certain prices related to such services. The People, the City of Chicago, the Cook County State's Attorney's office, AARP, Data Net Systems, and TruComm all urged the Commission not to accept the joint proposal.

In July 2006, the administrative law judge (ALJ) issued a proposed order recommending, in part, the Commission reject the joint proposal and find measured service, caller ID, and call waiting be classified noncompetitive. The Commission, however, disagreed with the ALJ. On August 30, 2006, the Commission issued its decision reclassifying Illinois Bell's measured services for MSA-1 as competitive and adopting the joint proposal upon modifying it.

Illinois Bell, petitioner, and AARP, as well as other parties, filed applications for rehearing with the Commission. On October 13, 2006, the Commission explicitly denied the applications for rehearing filed by Illinois Bell, petitioner, and other parties. The Commission did not rule on the merits of AARP's application.

Three petitions for administrative review followed in

- 3 -

two appellate districts. On October 13, 2006, Illinois Bell filed the first of its two petitions in this court, docketed as No. 4-06-0882. On October 23, 2006, Illinois Bell filed its second (No. 4-06-0911). One day later, in the First District, petitioner filed its notice of appeal and petition for administrative review (No. 1-06-3014).

In November 2006, Illinois Bell filed, in the First District, a motion to transfer petitioner's appeal to the Fourth District or to dismiss petitioner's appeal for lack of jurisdiction. Illinois Bell maintained because it filed the first appeal, the Fourth District had exclusive jurisdiction. The First District, without ruling on the jurisdiction arguments, agreed to the transfer and, in December 2006, transferred petitioner's appeal to the Fourth District. People ex rel. Madigan v. Illinois Commerce Comm'n, 369 Ill. App. 3d 126, 860 N.E.2d 459 (2006). Upon transfer, the appeal was docketed as No. 4-06-1063.

On January 4, 2007, petitioner filed in this court a motion to dismiss Illinois Bell's appeals (Nos. 4-06-0882 and 4-06-0911). Petitioner argued both of Illinois Bell's petitions for administrative review were prematurely filed and invalid as they were filed before the Commission resolved all of the postjudgment motions. On January 12, 2007, this court granted petitioner's motion, dismissing Illinois Bell's appeals. Illinois Bell Telephone Co. v. Illinois Commerce Comm'n, Nos. 4-06-0882, 4-06-0911, cons. (January 12, 2007) (unpublished order under Supreme Court Rule 23). Illinois Bell did not petition the

- 4 -

supreme court for leave to appeal.

Also in January 2007, this court dismissed petitioner's appeal in No. 4-06-1063. We held petitioner failed to file a timely application for rehearing in the Commission and such failure precluded our review. People ex rel. Lisa Madigan v. Illinois Commerce Comm'n, No. 4-06-1063 (January 18, 2007) (unpublished order under Supreme Court Rule 23). Petitioner appealed to the Supreme Court of Illinois.

In November 2008, our supreme court reversed and remanded our decision in case No. 4-06-1063. The court first concluded petitioner timely filed its application for rehearing with the Commission and this court did not lack jurisdiction on that particular ground. People ex rel. Madigan v. Illinois Commerce Comm'n, 231 Ill. 2d 370, 389, 899 N.E.2d 227, 237 (2008). The court then ordered this court to (1) determine whether the subject matter of the Commission's order lies within the First or Fourth District, if either; (2) if the subject matter lies in both districts, decide which district first acquired jurisdiction over petitioner's appeal; and (3) consider appellate jurisdiction in light of Supreme Court Rules 303(a)(2) (210 Ill. 2d R. 303(a)(2)) and 335 (155 Ill. 2d R. 335). Madigan, 231 Ill. 2d at 389, 899 N.E.2d at 237.

We consider the appeal on remand.

## II. ANALYSIS

Petitioner's appeal is one from the decision of the Commission, an administrative body. We have jurisdiction to

- 5 -

review administrative decisions only as provided by law. Ill. Const. 1970, art. VI, §6; <u>Town & Country Utilities, Inc. v. Illinois Pollution Control Board</u>, 225 Ill. 2d 103, 121, 866 N.E.2d 227, 237-38 (2007). To review the direct appeal of an administrative action, we must exercise special statutory jurisdiction. <u>McGaughy v. Illinois Human Rights Comm'n</u>, 165 Ill. 2d 1, 6-7, 649 N.E.2d 404, 407 (1995). The statute that gives an appellate court jurisdiction over an administrative action also limits it. <u>Town & Country Utilities</u>, 225 Ill. 2d at 122, 843 N.E.2d at 238.

In this case, the statute that gives an appellate court power to review a decision of the Commission is section 10-201(a) of the Public Utilities Act (220 ILCS 5/10-201(a) (West 2006)). Section 10-201(a) provides two prerequisites for an appellate court to have jurisdiction. First, the subject matter of the hearing must be situated in the judicial district of the appellate court. 220 ILCS 5/10-201(a) (West 2006). Second, if the subject matter "is situated in more than one district," then the appellate court that first acquires "jurisdiction of any appeal" from the Commission's order is the court that maintains jurisdiction until the appeal is disposed. 220 ILCS 5/10-201(a) (West 2006).

In <u>Madigan</u>, our supreme court concluded the jurisdictional analysis under section 10-201(a) is sequential. See <u>Madigan</u>, 231 Ill. 2d at 388, 899 N.E.2d at 237 ("Because an appeal of a Commission decision is allowed by law only in those

- 6 -

districts where the subject matter of the appeal is situated, the appellate court must meet that statutory requirement, even before it can determine which district first acquired jurisdiction"). According to section 10-201(a) and court order, we must first determine where the subject matter is situated before we may turn to the question of which appellate court first acquired jurisdiction.  See Madigan, 231 Ill. 2d at 388, 899 N.E.2d at 237.

## A. Situs of the Subject Matter

The parties dispute whether the subject matter of the Commission's order is situated in the Fourth District.  Petitioner's position is the subject matter is situated in the First District and not in the Fourth District.  Petitioner argues Illinois Bell cannot specify any evidence showing the Commission considered competition, phone lines, or customers within the jurisdiction of the Fourth District.  Petitioner further maintains William Taylor, an expert witness presented by Illinois Bell, testified the "Chicago LATA" does not include part or all of any county within the Fourth District.  Taylor testified the relevant market within the Chicago LATA contained Cook County, which is in the First District, as well as other counties in the Second and Third Districts.

Illinois Bell argues the subject matter of the order is situated in the Fourth District.  Illinois Bell acknowledges most of the customers affected by the order are in the First District but argues MSA-1 extends into part of Livingston County, a county in the Fourth District.  Illinois Bell emphasizes when the

- 7 -

Commission reclassified services, it did so in "MSA-1." In its appellee brief, the Commission adopted Illinois Bell's argument. We agree with Illinois Bell and find the subject matter is situated in the Fourth District.

In their arguments on appeal, the parties emphasize two different geographical areas: the Chicago LATA and MSA-1. Petitioner focuses on the Chicago LATA, while Illinois Bell and the Commission use the MSA-1 term. According to Taylor's expert testimony, "LATA" stands for "Local Access and Transport Area." LATA's were created as part of the 1984 divestiture of the Bell system. There are 14 LATA's in Illinois. In contrast, an MSA, or metropolitan statistical area, "is a county or group of counties having a large clustered population, including adjacent areas having a high degree of community of interest with the core population center." The Chicago LATA and MSA-1 do not have the same boundaries, but their geographical areas overlap significantly: "almost 98[%] of the lines in the Chicago LATA are in the Chicago MSA." The Commission, in its order, made its findings in relation to MSA-1. For example, it determined "the market for measured service is properly classified as competitive in MSA-1."

The record shows expert witness Taylor identified, on a table, the counties in the Chicago LATA and MSA-1. The table is entitled "County Comparisons Among the LATA, DMA[,] and MSA." None of the counties listed fall within the Fourth District.

The record, however, also contains expert testimony MSA-1 extends into part of Livingston County. When asked to

define MSA-1, W. Karl Wardin, an expert witness proferred by Illinois Bell, testified the area covered the Chicago metropolitan area, "including all of Cook County and all of the surrounding collar counties of Lake, DuPage, Kendall[,] and Will; most of McHenry, Kane, Grundy[,] and Kankakee [C]ounties; part of LaSalle and Iroquois [C]ounties; and a fraction of Livingston [C]ounty." In addition, at least one schedule offered by Wardin lists the town of Dwight among other cities and suburbs, such as Chicago, Des Plaines, Aurora, and Wheaton. By listing Dwight on this schedule, Wardin indicates there are Livingston County residential access lines within the Chicago LATA. We note, after responding to the question defining MSA-1, Wardin referred to both MSA-1 and the Chicago LATA as the Chicago LATA.

In addition to this testimony by Wardin, petitioner, in other filings before this court, admitted consumers in Livingston County are affected by the Commission's order. We take judicial notice of petitioner's motion to dismiss Illinois Bell's consolidated appeals in Nos. 4-06-0882 and 4-06-0911. Petitioner stated the following:

> "The overwhelming majority of the 2.4
> million consumers affected by the Order re-
> side in the First, Second[,] and Third Judi-
> cial Districts, including Cook, Lake, DuPage,
> Kendall, Will, most of McHenry, Kane, Grundy,
> Kankakee, and part of LaSalle and Iroquois
> Counties. *** The consumers affected by the

- 9 -

Order living in the Fourth Judicial District are only those in the Dwight area, representing a fraction of Livingston County, and a tiny fraction of all customers affected by the Order."

We agree with petitioner this is not a concession as to this court's jurisdiction, but it may be interpreted as petitioner's accepting Wardin's testimony as true.

We further conclude the petitioner wrongly states there is no evidence in the record showing the Commission considered competition, phone lines, or customers within the Fourth District. While the Commission does not explicitly reference the residential lines in Livingston County, there is evidence listing Dwight and identifying the level of competition for retail residential access lines among Dwight customers. This evidence appears in a schedule, which we referred to above, that (1) lists exchanges by city; (2) identifies the numbers of "Chicago LATA Retail Residential Access Lines," "Wireless Estimate" numbers, and "AT&T CLEC [(Competitive Local Exchange Carriers)] Chicago LATA Residential Access Lines" users; and (3) provides the ratio for residential CLEC and wireless users to Illinois Bell users by city. In its order, when summarizing Illinois Bell's position, the Commission used this 23.9% figure when it made the following statement: Illinois Bell "presented evidence showing that at the time the residential services at issue were classified as competitive, CLECs and wireless carriers alone served approximately 24%

- 10 -

of the residence lines in [Illinois Bell's] service territory in the Chicago LATA."  The Dwight consumer information appears to have been part of the analysis and the Commission's ultimate decision.

Given the above testimony, petitioner's earlier concession, and the evidence cited by the Commission, we find the subject matter of the hearing lies within the Fourth District, as well as in the First, Second, and Third Districts.  Although the number of consumers and the size of the territory in the Fourth District is very small in relation to the other districts, section 10-201 does not indicate a preference for jurisdiction based upon which district possesses proportionately more subject matter or affected persons.

B. First Acquired Jurisdiction

Having determined the subject matter is situated in more than one district, we turn to the question of which district first acquired jurisdiction over an appeal from the Commission's order.  Petitioner argues the First District first acquired jurisdiction, even though its appeal was not the first filed. Petitioner's appeal (No. 1-06-3014) was filed in the First District on October 24, 2006, while Illinois Bell filed its appeals in the Fourth District on October 13 and 23, 2006 (Nos. 4-06-0882, 4-06-0911).  Petitioner emphasizes because this court dismissed Illinois Bell's appeals for lack of jurisdiction, the Fourth District did not have jurisdiction over any appeal of the Commission's order when the First District acquired jurisdiction

- 11 -

over its appeal.

Illinois Bell acknowledges the dismissed appeals, but argues the supreme court's decision in <u>Madigan</u> indicates we should "take a fresh look at this issue." Illinois Bell maintains petitioner made the same argument in <u>Madigan</u>, but the supreme court "obviously did not accept the [petitioner's] theory that the dismissals automatically meant that the First District was first to acquire jurisdiction." Illinois Bell contends this court was then instructed to determine which district first acquired jurisdiction and consider Supreme Court Rule 303 (210 Ill. 2d R. 303). Illinois Bell then essentially challenges our decision in Nos. 4-06-0882 and 4-06-0911 by arguing its appeals were timely.

While Illinois Bell urges this court to "take a fresh look" at its earlier appeals, Illinois Bell cites no supreme court rule or statute that gives this court authority to open those cases. Illinois Bell filed its appeals in October 2006. In January 2007, petitioner moved to dismiss Illinois Bell's appeals as untimely. Illinois Bell filed a brief in response. On January 12, 2007, we agreed with petitioner and dismissed the appeals for lack of jurisdiction. Illinois Bell did not file a petition for rehearing under Supreme Court Rule 367(a) (210 Ill. 2d R. 367(a)) or appeal to the supreme court under Rule 315(b) (210 Ill. 2d R. 315(b)). After the deadlines in those rules expired, this court lacked authority to reopen those appeals.

Rule 303(a)(2) does not make Illinois Bell's appeals

timely or authorize reconsideration of those appeals.  Illinois Bell relied on an amended version of Rule 303(a)(2) (Official Reports Advance Sheet No. 8 (April 11, 2007), R. 303(a)(2), eff. May 1, 2007) in support of its argument its appeals were timely.  This version, however, became effective on May 1, 2007--almost four months after this court's January 12, 2007, final decision finding Illinois Bell's appeals untimely.  See Official Reports Advance Sheet No. 8 (April 11, 2007), R. 303(a)(2), eff. May 1, 2007.

At the time of the January 2007 ruling, the applicable Rule 303(a)(2) appeared at 210 Ill. 2d R. 303(a)(2).  Interestingly, it is this version of the rule the Madigan court told this court to consider.  See Madigan, 231 Ill. 2d at 389, 899 N.E.2d at 237.  Under this version, petitions for review filed in the appellate court before the Commission resolved all of the postjudgment motions were untimely and deprived the appellate court of jurisdiction over such petitions.  210 Ill. 2d R. 303(a)(2) ("When a timely postjudgment motion has been filed by any party ***, a notice of appeal filed before the entry of the order disposing of the last pending postjudment motion shall have no effect").  In contrast, the amended version provides "when a timely postjudgment motion has been filed, a notice of appeal filed before 'the final disposition of any separate claim' does not become effective until the order disposing of the separate claim is entered."  In re Marriage of Duggan, 376 Ill. App. 3d 725, 727-28, 877 N.E.2d 1140, 1143 (2007), quoting Official

Reports Advance Sheet No. 8 (April 11, 2007), R. 303(a)(2), eff. May 1, 2007. While the amended version may have applied if it were effective while Illinois Bell's appeals were pending, it cannot be used to resurrect a final judgment. See generally Duggan, 376 Ill. App. 3d at 730, 877 N.E.2d at 1145 ("[N]ew procedural rules may be applied to pending appeals without interfering with a vested right" (emphasis added)).

Our supreme court also noted Supreme Court Rule 335 (155 Ill. 2d R. 335) may apply. Madigan, 231 Ill. 2d at 389, 899 N.E.2d at 237. Rule 335, entitled "Direct Review of Administrative Orders by the Appellate Court," provides the procedures for statutory direct reviews of administrative-agency orders. 155 Ill. 2d R. 335. We find it does not provide a procedure permitting review of Illinois Bell's orders.

In addition, Madigan does not authorize this court to reconsider our rulings in the Illinois Bell appeals. Contrary to Illinois Bell's assertion, the supreme court did not reject petitioner's argument that because Illinois Bell's appeals were dismissed the First District automatically had jurisdiction; the supreme court simply refused to consider the argument at that time. The supreme court summarized the arguments and left the jurisdictional questions under section 10-201(a) to this court, while observing neither this district nor the First District had yet considered those arguments. Madigan, 231 Ill. 2d at 388-89, 899 N.E.2d at 237.

Not only have we found no rule or statute authorizing

us to reopen Illinois Bell's appeals, but also the collateral-estoppel doctrine prohibits such an action.  Under this doctrine, relitigating an issue already determined is barred in the following circumstances:

> "(1) the court rendered a final judgment in the prior case; (2) the party against whom estoppel is asserted was a party or in privity with a party in the prior case; and (3) the issue decided in the prior case is identical with the one presented in the instant case."  People v. Tenner, 206 Ill. 2d 381, 396, 794 N.E.2d 238, 247 (2002).

All three elements apply here.

We note petitioner argues the law-of-the-case doctrine precludes revisiting Illinois Bell's appeals.  Like the collateral-estoppel doctrine, the law-of-the-case doctrine prevents parties from relitigating issues already decided. Tenner, 206 Ill. 2d at 395, 794 N.E.2d at 247.  Unlike collateral estoppel, however, the law-of-the-case doctrine applies to issues already determined in the same case.  Tenner, 206 Ill. 2d at 396, 794 N.E.2d at 247.  Illinois Bell's appeals and petitioner's appeal were not the same case.  One is not a continuation of another, the appeals were not consolidated, and section 10-201's reference to multiple appeals contemplates separate actions from the same order.

This court has not acquired jurisdiction over any

appeal from the Commission's order.  Because petitioner's appeal was filed in the First District, that district may have jurisdiction over petitioner's appeal.  As our earlier analysis shows, it is clear the subject matter of the Commission's order lies in the First District, satisfying the first part of section 10-201.  The question remains, however, whether the First District has jurisdiction over petitioner's appeals under the supreme court rules. We defer to the First District on that matter.

### III. CONCLUSION

For the stated reasons, we find this court lacks jurisdiction over the appeal, and we transfer the appeal to the First District.

Appeal transferred.

McCULLOUGH, P.J., and STEIGMANN, J., concur.