2025 IL App (1st) 241169
Opinion filed: March 13, 2025

FIRST DISTRICT
FOURTH DIVISION

No. 1-24-1169

VENTUS HOLDINGS, LLC,

    Plaintiff-Appellee,

v.

HAROLD RADDLE,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)

Appeal from the
Circuit Court of
Cook County

No. 2023-M1-712919

Honorable
Teresa Smith-Conyers,
Judge, presiding.

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Justices Hoffman and Ocasio concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiff, Ventus Holdings, LLC, filed an eviction action against defendant, Harold Raddle, seeking possession of the property located at 208 East 45th Street, Unit 2, in Chicago (the subject property) because defendant failed to vacate it after plaintiff decided not to renew his lease. Defendant filed a motion for summary judgment, arguing that the subject property receives rental assistance funding from the State of Illinois's rental housing support (RHS) program, which renders the tenancy subject to certain State regulations. Defendant contended that the applicable regulations prevent plaintiff from refusing to renew his lease unless it has good cause to do so. Defendant argued that plaintiff failed to show any good cause for refusing to renew his lease and therefore that he was not required to vacate the property. The circuit court denied defendant's summary judgment motion. The case proceeded to a bench trial, during which defendant raised the affirmative defense that plaintiff waived its right to maintain the eviction action by accepting rental payments from defendant subsequent to the purported termination of the tenancy. The court found no waiver and entered an eviction order against defendant. On appeal, defendant argues that

the court erred by denying his motion for summary judgment and by entering the eviction order following the bench trial. We affirm.

¶ 2    Defendant entered into a lease with plaintiff to rent a unit subsidized from funds from the RHS program, which provides rental assistance payments to landlords in the program to establish more affordable housing stock in Illinois for low-income tenants. See 310 ILCS 105/5 (West 2022). The rental assistance payments are governed by the Rental Housing Support Program Act (Act), which delegates authority to the Illinois Housing Development Authority (IHDA) to "administer the Program and adopt rules for its implementation." *Id.* § 10(a). IHDA appoints "local administering agencies" for the different regions of Illinois to disperse rental assistance funds and select landlords for the program. *Id.* § 15(a). For Chicago, the local administering agency is the Chicago Low-Income Housing Trust Fund.

¶ 3    Defendant's lease term for his subsidized unit ended on July 30, 2023. Four months prior thereto, plaintiff served defendant with a 120-day notice of termination, informing him that his lease would not be renewed after its July 30 expiration date. The notice did not state any reason why plaintiff was declining to renew the lease and terminating his tenancy.

¶ 4    Despite receiving the notice, defendant continued to reside in the unit after the expiration of the lease term. On August 4, 2023, defendant paid his rent by depositing cash directly into plaintiff's bank account with JP Morgan Chase Bank (Chase). The next day, plaintiff returned the funds to defendant.

¶ 5    Plaintiff filed its eviction action on August 29, 2023. Defendant filed a motion for summary judgment, arguing that as a recipient of rental subsidies under the RHS program, plaintiff was subject to certain regulations governing the program, including section 380.506 of Title 47 of the Illinois Administrative Code (Code). Section 380.506 states: "Landlords shall have the right to

evict Tenants from Units for good cause, as permitted under State and local law." 47 Ill. Adm. Code 380.506 (2022). Defendant argued that pursuant to section 380.506, a decision not to renew a tenant's lease of a subsidized unit under the RHS program requires good cause. Plaintiff had failed to set forth any such good cause in its 120-day notice of termination, and therefore defendant contended that plaintiff was required to renew his lease. Accordingly, defendant asked the court to grant summary judgment in his favor on plaintiff's eviction action.

¶ 6     The circuit court denied defendant's motion for summary judgment on January 11, 2024. On March 11, 2024, defendant filed an affirmative defense to the eviction action, arguing that plaintiff waived its right to terminate his lease because it had continued to accept his monthly rental payments for the eight months following the expiration of the 120-day notice.

¶ 7     The cause proceeded to a bench trial. At trial, defendant testified about how he remained in possession of the subject property after receiving the notice that his lease would not be renewed on July 30, 2023. Defendant stated that he paid his rent in August 2023 by depositing cash in plaintiff's bank account with Chase, which was the parties' typical practice for the payment of rent. Plaintiff returned the money to him. Defendant subsequently made seven monthly rental payments from September 2023 through March 2024 by the same method of depositing the cash into plaintiff's bank account; plaintiff did not return any of those monies to him.

¶ 8     Marcos Alex, one of plaintiff's property managers, testified that defendant's lease stated that defendant could pay his rent by depositing cash directly into plaintiff's bank account at Chase. The lease required defendant to sign his name to the deposit slip because otherwise plaintiff would have no way of knowing who had made the payment and to whose account the rental payment should be applied.

¶ 9    Alex testified that plaintiff sent defendant a 120-day notice of termination, informing defendant that his lease would not be renewed after July 30, 2023. However, defendant continued to reside in the subject property even after the expiration of the lease. Plaintiff received a rental payment from defendant in August 2023, the first month after the expiration of his lease. Alex returned the money to defendant by writing a check for the amount of the payment and sliding it under his door. Alex also left a voice message for defendant, explaining that since the lease had not been renewed, plaintiff would no longer be accepting further rent payments from him. Despite being told that plaintiff would not accept further rent payments from him, defendant continued to make rental payments from September 2023 through March 2024 by depositing the cash in plaintiff's bank account at Chase. However, defendant did not write his name on the deposit slips, and therefore Alex did not know that the rental payments came from him and those monies were never applied to defendant's account. Approximately one month before trial, defendant's attorney notified plaintiff that the rental payments were from defendant. Alex then wrote out a check to reimburse defendant for the total amount paid and informed him that he could pick up the check. Defendant never picked up the check.

¶ 10    The circuit court found that since plaintiff was unaware that the rental payments for September 2023 through March 2024 came from defendant, plaintiff's acceptance of the payments did not waive its right to maintain the eviction action. The court entered an eviction order giving plaintiff possession of the subject property. Defendant filed a motion to reconsider, which the circuit court denied. Defendant appeals. Chicago Volunteer Legal Services filed an *amicus curiae* brief in support of defendant. The circuit court entered an order staying the eviction pending the appeal.

¶ 11    First, defendant argues that the court erred by denying his motion for summary judgment. Generally, when a motion for summary judgment is denied and the cause proceeds to trial, the order denying the summary judgment motion merges with the judgment entered and is not appealable. *Labate v. Data Forms, Inc.*, 288 Ill. App. 3d 738, 740 (1997). But where, as here, the issue raised in the summary judgment motion is one of law and was not before the trier of fact at trial, the order denying the motion does not merge and may be reviewed on appeal. *Id.*

¶ 12    In his summary judgment motion, defendant argued that section 380.506 of Title 47 of the Code (47 Ill. Adm. Code 380.506 (2022)) provides that a landlord must have "good cause" not to renew a tenant's lease of a unit subsidized under the RHS program. Plaintiff's 120-day notice of the termination of defendant's tenancy did not state any cause for why his lease was not being renewed, and therefore defendant contends he should not be required to vacate the subject property.

¶ 13    Resolution of this issue requires us to interpret section 380.506. Administrative rules and regulations have the force and effect of law and are construed under the same standards governing the construction of statutes. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 380 (2008). When interpreting an agency regulation, our objective is to effectuate the intent of the agency, the most reliable indicator of which is the language of the regulation. *Id.* In determining the plain meaning, we consider the entirety of the regulation. *Id.* Where the language of the regulation is clear and unambiguous, we apply it as written, without resorting to extrinsic aids of statutory construction. *Id.* The interpretation of a regulation is a question of law, which we review *de novo*. *Id.*

¶ 14    As discussed, section 380.506 of Title 47 states that "Landlords shall have the right to evict Tenants from Units for good cause, as permitted under State and local law." 47 Ill. Adm. Code 380.506 (2022). By its terms, section 380.506 applies to evictions, not to renewal decisions.

Defendant effectively asks us to construe section 380.506 as applying to renewal decisions, specifically, as requiring all leases of units subsidized under the RHS program to be indefinite and automatically renewable, subject to termination only if the landlord shows good cause for not renewing them. Defendant's construction would require us to add language to section 380.506 that is not there, as nothing in section 380.506 converts a fixed-term lease into an indefinite one that does not expire unless good cause is shown for nonrenewal. Under familiar rules of statutory construction, we may not add words to the regulation or fill in perceived omissions. See *People v. Wells*, 2023 IL 127169, ¶ 31.

¶ 15    Defendant argues that his construction of section 380.506 as requiring indefinite leases of subsidized units in the RHS program comports with the legislative intent, as evidenced by section 5 of the Act and section 380.102 of Title 47 of the Code, both of which state that the purpose of the RHS program is to provide stability for residential tenants by supplying "decent, affordable, permanent rental housing." See 310 ILCS 105/5 (West 2022); 47 Ill. Adm. Code 380.102 (2022). Defendant contends that construing section 380.506 as providing for indefinite leases would allow the tenants in the RHS program to achieve the financial and housing stability at the heart of the program.

¶ 16    This argument by defendant ignores section 380.104 of Title 47 of the Code, which states that the regulations governing the RHS program "shall be construed in conformity and compliance with applicable federal and State law." 47 Ill. Adm. Code 380.104 (2022). Applicable state law provides that a residential lease does not automatically renew at year's end or extend on indefinitely such that the tenant may remain in possession after the expiration of the lease term; rather, a tenant who remains in possession after the expiration of his lease becomes a tenant at sufferance. *A.O. Smith Corp. v. Kaufman Grain Co.*, 231 Ill. App. 3d 390, 398 (1992). At the sole

discretion of the landlord, the tenant at sufferance may be evicted as a trespasser or treated as a holdover tenant. *Id.* In the instant case, defendant became a tenant at sufferance when he remained in possession after the expiration of his lease, and plaintiff sought to evict him as a trespasser, which it had the right to do. Plaintiff provided defendant with a 120-day notice of termination in compliance with section 5-12-130(j)(3) of the Chicago Municipal Code, known as the Residential Landlord and Tenant Ordinance, which provides for at least 120-day notification in writing of the landlord's intent not to renew the rental agreement. See Chicago Municipal Code § 5-12-130(j)(3) (amended Nov. 24, 2020). Defendant refused to vacate the premises at the end of the 120-day notice, and therefore plaintiff had good cause to evict him.

¶ 17 Defendant's construction of section 380.506 of Title 47 as providing for indefinite leases of subsidized units in the RHS program also runs afoul of other regulations governing the RHS program, specifically, sections 380.307 and 380.502 of Title 47 of the Code. Section 380.307 states: "If approved, rent increases shall take effect either at the time the lease for the Unit is renewed or, *if a lease is not renewed*, in the first month Rental Assistance is subsequently provided for a new Tenant for the Unit." (Emphasis added.) 47 Ill. Adm. Code 380.307 (2022). Section 380.502 states that landlords shall maintain monthly records of the tenant contribution and rental assistance payments received for each unit and that "Copies of all records described in this Section shall be retained by Landlords for the term of the lease plus three years *from the date of termination of the lease*." (Emphasis added.) *Id.* § 380.502. Sections 380.307 and 380.502 indicate that properties for which rental assistance is provided under the RHS program are, in fact, subject to renewable (not indefinite) leases that may be terminated by the landlord.

¶ 18 Defendant argues that his construction of section 380.506 is consistent with the IHDA's interpretation of the regulation, and that we should give deference to the IHDA. See *McDougall v.*

*White*, 355 Ill. App. 3d 483, 486 (2005) (courts give substantial deference to the interpretation placed on an ambiguous regulation by the agency charged with its administration). Specifically, defendant points to the IHDA's model contract for use between local administering agencies and their chosen landlords, which states: "The Landlord shall not evict any Tenant from a RHS Program Unit without good cause." Defendant contends that the model contract supports his argument that plaintiff here was required to renew his lease in the absence of good cause for not doing so. Defendant's argument is without merit. The IHDA's model contract merely restates section 380.506's requirement that eviction decisions be made for good cause and does not apply to renewal decisions under the program.

¶ 19     In sum, landlords in the RHS program are required to show good cause under section 380.506 only when evicting a tenant, not when making a renewal decision. The "good cause" element was satisfied here when defendant refused to leave the subject property after being timely notified of the expiration of his lease in accordance with section 5-12-130(j)(3) of the Chicago Municipal Code. The Code of Civil Procedure explicitly provides that an eviction action can be maintained when the tenant holds possession without right after notice to quit the premises upon termination of the lease. See 735 ILCS 5/9-102(a)(4) (West 2022). Accordingly, the court committed no error in denying defendant's motion for summary judgment on plaintiff's eviction action.

¶ 20     Next, defendant contends the circuit court erred following the bench trial when it ruled that he had not proven his affirmative defense that plaintiff waived its right to terminate his lease. As the party raising the affirmative defense, defendant bore the burden of proof. *Cordeck Sales, Inc. v. Construction Systems, Inc.*, 382 Ill. App. 3d 334, 366 (2008). Generally, the trial court's factual determinations at a bench trial will not be reversed on appeal unless they are against the manifest

weight of the evidence. *International Supply Co. v. Campbell*, 391 Ill. App. 3d 439, 447-48 (2009). Where, as here, the facts surrounding the purported waiver are undisputed, the question of waiver becomes one of law (*North Orchard Place v. Hill*, 2022 IL App (1st) 210649-U, ¶ 20 (cited for its persuasive authority under Illinois Supreme Court Rule 23(e) (eff. Feb. 1, 2023)) such that our review is *de novo*. *Campbell*, 391 Ill. App. 3d at 448; *People v. White*, 2025 IL 129767, ¶ 26.

¶ 21    Our supreme court has held that any act of a landlord affirming the existence of a lease and recognizing a tenant as a continued lessee can result in the landlord's waiving of the right to terminate the lease. *Avdich v. Kleinert*, 69 Ill. 2d 1, 7 (1977); *Midland Management Co. v. Helgason*, 158 Ill. 2d 98, 102 (1994). Defendant here argues that plaintiff committed such affirmative acts by accepting his seven monthly rental payments following the purported termination of the lease. However, plaintiff's property manager, Alex, testified at trial that after receiving a rental payment from defendant in the first month after the expiration of his tenancy, plaintiff returned the money and expressly informed defendant that it would no longer accept any more rents from him. Despite plaintiff's warning that no further payments would be accepted, defendant subsequently made seven more monthly rental payments by depositing cash into plaintiff's bank account with Chase; however, defendant did not write his name on the deposit slips or otherwise notify plaintiff that he made the deposits and therefore, according to Alex, plaintiff was unaware that the monies came from defendant and the monies were never applied to his account. When defendant's attorney notified plaintiff shortly before trial that defendant had made cash payments to the Chase account, Alex wrote defendant a check to reimburse him and told him to come pick up the check. Defendant never picked up the check. On these particular facts, we find no acts by plaintiff recognizing the continued existence of the lease and affirm the court's finding that defendant did not prove that plaintiff waived its right to terminate the lease.

¶ 22    For all the foregoing reasons, we affirm the circuit court.

¶ 23    Affirmed.

***Ventus Holdings, LLC v. Raddle*, 2025 IL App (1st) 241169**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2023-M1-712919; the Hon. Teresa Smith-Conyers, Judge, presiding. |
| **Attorneys for Appellant:** | Aidan Orsino, Michelle Gilbert, and Jonathon Raffensperger, of Law Center for Better Housing, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Bethany D. Hager, of Halsted Law Group, of Chicago, for appellee. |
| ***Amicus Curiae*:** | Daniel Quarfoot, of Chicago Volunteer Legal Services, of Chicago (Nathaniel Schetter, law school graduate), *amicus curiae*. |