2022 IL App (1st) 210839-U

SIXTH DIVISION
March 18, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JENNIFER WILDER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | Appeal from the |
| | ) | Circuit Court of |
| v. | ) | Cook County. |
| | ) | |
| The BOARD OF REVIEW OF THE DEPARTMENT OF | ) | |
| EMPLOYMENT SECURITY, the DIRECTOR OF | ) | |
| EMPLOYMENT SECURITY, the DEPARTMENT OF | ) | No. 20 L 050368 |
| EMPLOYMENT SECURITY, and THRESHOLDS c/o | ) | |
| Sedgwick Bruce Kijewski, | ) | |
| | ) | |
| Defendants, | ) | Honorable |
| | ) | Daniel P. Duffy, |
| (The Board of Review of the Department of Employment | ) | Judge Presiding. |
| Security, the Director of Employment Security, and the | ) | |
| Department of Employment Security, Defendants-Appellees). | ) | |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Pierce and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1     *Held*: The circuit court's order dismissing plaintiff's complaint for administrative review as untimely is reversed, where the court found that plaintiff timely delivered her complaint to the clerk of the circuit court for filing but, through no fault of her own, it was not recorded on that date, and where the court mistakenly concluded that it lacked authority to correct the filing date *nunc pro tunc*.

¶ 2     Plaintiff Jennifer Wilder applied for and received unemployment benefits from the Department of Employment Security (Department). Two questions subsequently arose concerning Ms. Wilder's entitlement to those benefits, one concerning whether she had sufficiently demonstrated that she was able, willing, and actively seeking work during a single, two-week pay period, and one concerning whether Ms. Wilder qualified for unemployment benefits in the first place. In a written decision, the Department's Board of Review (Board) concluded that Ms. Wilder had left work voluntarily and was thus ineligible for any unemployment benefits. Several days later, the Board issued a second decision finding that Ms. Wilder had also failed to demonstrate that she was medically cleared for work during the two-week period in question, even though the Board's earlier decision had rendered that issue moot.

¶ 3     Although Ms. Wilder sought administrative review of both decisions in the circuit court, only her complaint for review of the Board's second decision was file-stamped within the 35-day limitations period established by the Administrative Review Law (735 ILCS 5/3-103 (West 2018)). Defendants moved to dismiss her complaint from the Board's earlier decision as untimely. The circuit court at first denied the motion. Believing Ms. Wilder, who insisted that she had presented both complaints for filing on the same day, the court entered a *nunc pro tunc* order directing the clerk of the court to treat her complaint from the Board's initial order as having been filed on the same day as her other complaint. When defendants pointed out to the court, however, that the rule it relied on to issue that order applied only to electronic filings, the court concluded that it was compelled to grant their motion for reconsideration and dismiss the complaint as untimely. Ms. Wilder now appeals.

¶ 4                                    I. BACKGROUND

¶ 5     This is a *pro se* appeal from the dismissal of a complaint for administrative review

2

challenging the denial of unemployment benefits. For context, we first briefly outline the administrative process applicable to such claims.

¶ 6                    A. Administrative Proceedings on Unemployment Claims

¶ 7    The Unemployment Insurance Act (Act) was enacted to lighten the burden of involuntary unemployment in this state by requiring "the setting aside of reserves during periods of employment to be used to pay benefits during periods of unemployment." 820 ILCS 405/100 (West 2018). An eligible unemployed individual may receive unemployment benefits for a given week if he or she (1) has registered for work and is reporting at an employment office; (2) has made a claim for benefits with respect to that week; (3) has certified that he or she is able and available for work and was actively seeking work during the period in question; and (4) was paid above a statutorily established threshold amount of wages for insured work during a "base period" of employment. *Id.* § 500(A)-(C), (E). However, an individual is generally ineligible for benefits "for the week in which he or she has left work *** and, thereafter," if he or she "left work voluntarily without good cause attributable to the employing unit." *Id.* § 601(A).

¶ 8    A claim for unemployment benefits is first considered by a claims adjudicator designated by the Director of the Department of Employment Security (Director). *Id.* § 701. The claims adjudicator makes a "finding" regarding the total wages for insured work that were paid to the claimant during a base period of employment and, on the basis of that figure, computes the weekly benefit amount payable to the claimant, if any. *Id.* For each week that benefits are claimed, the claims adjudicator then makes a "determination" of the claimant's eligibility. *Id.* § 702.

¶ 9    An appeal from the finding or determination of a claims adjudicator is generally heard by a referee and must be initiated within 30 days. *Id.* § 800. The parties are then afforded a "reasonable opportunity for a fair hearing," including consideration of "the record of the claimant's registration

for work," the claimant's "certification that, during the week or weeks affected by the hearing, he [or she] was able to work, available for work, and actively seeking work," and "any document in the files of the [Department] submitted to it by any of the parties." *Id.* § 801(A). The referee may "affirm, modify, or set aside the claims adjudicator's 'finding' or 'determination,' or both," and may also remand the case for further consideration. *Id.* A referee's decisions are final unless appealed to the Board within 30 days. *Id.*

¶ 10 In deciding whether to affirm, modify, or set aside the decision of a referee, the Board may elect to receive additional evidence. *Id.* § 803. Decisions of the Board are reviewable only in accordance with the provisions of the Administrative Review Law (*id.* § 1100), including its requirement that a complaint for review from the final decision of an administrative agency must be filed within 35 days of service of that decision on the affected party (735 ILCS 5/3-103 (West 2018)). This is the requirement that is at the center of the appeal.

¶ 11 B. Ms. Wilder's Unemployment Claims

¶ 12 From September 26, 2016, to July 9, 2018, when she went on maternity leave, Ms. Wilder worked as an employment specialist for Thresholds, an organization that provides health and social services to individuals with mental illness and substance abuse disorders. Ms. Wilder did not return to work at the conclusion of her 12-week maternity leave in October 2018 but elected instead to take additional (unpaid) leave pursuant to the Family and Medical Leave Act of 1993 (29 U.S.C. 2611 *et seq.* (West 2018)). Ms. Wilder ultimately did not return to work at all but instead notified Thresholds on May 29, 2019, that she was resigning. Ms. Wilder subsequently applied for and began receiving unemployment benefits from the Department.

¶ 13 Two questions arose concerning Ms. Wilder's eligibility for those benefits. The first was whether Ms. Wilder was both able and willing to work and actively seeking work from June 23,

2019, to July 6, 2019, a prerequisite to her receipt of benefits for that specific two-week period. The second was whether Ms. Wilder had voluntarily left her employment without good cause attributable to her employer. A finding that she had done so would render Ms. Wilder ineligible to receive unemployment benefits during any time period. A claims adjudicator answered both of these questions unfavorably to Ms. Wilder and, following an evidentiary hearing conducted by telephone on August 26, 2019, a referee affirmed the adjudicator's determinations on August 27, 2019. Ms. Wilder appealed both determinations to the Board, which considered the matters separately, under consecutive docket numbers, and issued two written decisions affirming the decisions of the referee.

¶ 14    In its first decision, issued on December 2, 2019, the Board summarized at length the testimony concerning Ms. Wilder's decision not to return to work following her maternity leave. According to the Board, Ms. Wilder testified that although she was cleared for work beginning in October 2018, her employer encouraged her to apply for long-term disability benefits rather than return to work at that time. According to her benefits administrator, Ms. Wilder did apply for such benefits on the basis of anxiety and stress. Ms. Wilder also testified that she did not return to work because she felt harassed and discriminated against when, in the days before her maternity leave began, her ability to work while pregnant was questioned and her complaints to HR were handled in a manner that she felt exacerbated the problem. Ms. Wilder acknowledged that one of her clients had committed suicide in this period just before her leave began and agreed that leadership had "contacted her to check on her stress level" and encouraged her to take time off "to digest it." The Board ultimately concluded that Ms. Wilder "left her job for compelling, but personal reasons" that were "not attributable to [her] employer" and was thus ineligible for unemployment benefits.

¶ 15    Three days later, on December 5, 2019, the Board issued a second written decision

affirming the referee's determination that Ms. Wilder had also failed to demonstrate that she was medically able to return to work during a single two-week period the preceding summer. Specifically, the Board faulted Ms. Wilder for submitting medical notes concerning her care plan at the hearing rather than a formal medical release authorizing her return to work.

¶ 16                    C. Ms. Wilder's Complaints for Administrative Review

¶ 17    In the circuit court, Ms. Wilder sought administrative review of both of the Board's written decisions. Her complaint with respect to the Board's December 5, 2019, decision—concluding that she failed to demonstrate she was medically released to work during the period from June 23, 2019, through July 6, 2019—was file-stamped December 20, 2019. The circuit court ruled in favor of Ms. Wilder on that challenge, concluding that the Board's "summary refusal to entertain [her] request to submit the additional evidence" the referee required of her "was error." *Wilder v. Board of Review of Illinois Department of Employment*, No. 19 L 050796 (Cir. Ct. Cook County, Mar. 11, 2020). The court reversed the Board's decision, ordered it to grant Ms. Wilder's request to submit a medical release from her physician as additional evidence in support of her claim, and remanded for a *de novo* hearing regarding her eligibility for benefits.

¶ 18    Pertinent to this appeal, Ms. Wilder's complaint for administrative review of the Board's December 2, 2019, decision—concluding that she was never eligible for unemployment benefits in the first place—was file-stamped August 17, 2020, 259 days after the decision was served on her. Defendants moved to dismiss that complaint under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(5) (West 2018)), on the basis that Ms. Wilder had failed to file it within 35 days of service, as required by section 3-103 of the Administrative Review Law (735 ILCS 5/3-103 (West 2018)) and the court thus lacked subject matter jurisdiction.

¶ 19    The circuit court at first denied the motion to dismiss. In a written order dated February 25,

2021, the court noted that Ms. Wilder, *pro se*, had "filed a series of responses to the Motion to Dismiss, maintaining that she attempted to appeal both the December 2, 2019 and the December 5, 2019 decisions at the same time," but that "due to a series of errors by the Clerk of the Circuit Court," her challenge to the December 2 decision "was never docketed." The court construed Ms. Wilder's pleadings "as a motion seeking relief pursuant to Supreme Court Rule 9(d)," which the court noted "provides a party an avenue to remedy clerk-generated electronic filing issues upon a showing of good cause." It then stated:

> "The court finds, as a matter of fact, that Wilder has made a showing of good cause warranting relief pursuant to Rule 9(d). The difficulties faced by *pro se* litigants attempting to comply with court deadlines in the face of the various closures and complications that have arisen from March 2020 to the present are legion."

The court ordered the clerk "to correct [Ms. Wilder's] initial filing dated August 17, 2020, *nunc pro tunc* to December 20, 2019," the date she filed her complaint for administrative review of the Board's December 5, 2019, decision and claimed that she had also attempted to seek administrative review of the Board's December 2, 2019, decision.

¶ 20    The Department filed a motion for reconsideration of that order, however, pointing out both that the agency decision Ms. Wilder challenged was issued pre-pandemic and her filings were made in person, rather than electronically, and arguing that Rule 9(d) did not apply to in-person filings. In a written order dated May 25, 2021, the court said that it was "compelled to agree." The court stated that "[d]espite the fact that it appear[ed] the Clerk of the Circuit Court erred in filing [Ms.] Wilder's appeal of the December 2, 2019 order, Rule 9(d) [did] not permit relief due to the fact that the filing was not made electronically."

¶ 21    This appeal followed.

¶ 22                                    II. JURISDICTION

¶ 23    The circuit court dismissed Ms. Wilder's *pro se* complaint for administrative review of the Board's December 2, 2019, decision on May 25, 2021. Ms. Wilder filed her notice of appeal from that order on the following day. We have jurisdiction pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 24                                     III. ANALYSIS

¶ 25    As an initial matter, we decline defendants' invitation to conclude that Ms. Wilder has forfeited her right to seek relief from this court by failing to cite the record or develop arguments in support of her position, as required by Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020). Although a party's *pro se* status does not relieve him or her from complying with the applicable rules, we do not find forfeiture as a matter of course for noncompliance. Where, as here, neither the length of the record nor the complexity of the issues presented prevents us from considering their merits, the outright dismissal of an appeal is too harsh a result. See, *e.g.*, *Niewold v. Fry*, 306 Ill. App. 3d 735, 737 (1999) (overlooking forfeiture under such circumstances, even where the appellant was represented by counsel). The record in this matter contains less than 140 pages, and Ms. Wilder's argument on appeal is clearly discerned from her brief. Ms. Wilder maintains that she sought administrative review of both of the Board's decisions within the 35-day period for doing so; that her complaint with respect to the December 2, 2019, decision was not docketed at that time because of a clerical error of the clerk of the circuit court; and that, even though Rule 9(d) did not specifically apply, the circuit court nevertheless had the inherent power to correct such an error in its records. We find no forfeiture under these circumstances and turn to the merits of Ms. Wilder's appeal.

¶ 26    Ms. Wilder appeals from the circuit court's grant of defendants' section 2-619 motion, based on its determination that her complaint for administrative review of the Board's December 2, 2019, decision was untimely. Dismissal is proper under section 2-619 of the Code if the court "does not have jurisdiction of the subject matter of the action" or if the action "was not commenced within the time limited by law. 735 ILCS 5/2-619(a)(1), (a)(5) (West 2020). We review the dismissal of a complaint under section 2-619 *de novo*. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). A court's findings of fact, however, "are generally accorded manifest-weight review." *Franz v. Calaco Development Corp.*, 352 Ill. App. 3d 1129, 1139 (2004). "A factual finding is against the manifest weight of the evidence when the opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based in evidence." *Samour, Inc. v. Board of Election Commissioners of the City of Chicago*, 224 Ill. 2d 530, 544 (2007).

¶ 27    Section 3-103 of the Administrative Review Law provides, with exceptions not relevant here, that "[e]very action to review a final administrative decision shall be commenced by the filing of a complaint and the issuance of summons within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision." 735 ILCS 5/3-103 (West 2018). Because final decisions of the Board are "reviewable only under and in accordance with the provisions of the Administrative Review Law" (820 ILCS 405/1100 (West 2020)), this requirement is jurisdictional (*Rodriguez v. Sheriff's Merit Commission of Kane County*, 218 Ill. 2d 342, 350 (2006)).

¶ 28    Here, it is undisputed that Ms. Wilder's complaint challenging the Board's December 2, 2019, decision—the decision finding, pursuant to section 601(A) of the Act (820 ILCS 405/601(A) (West 2018)), that she was completely ineligible for unemployment benefits because she left work voluntarily without good cause attributable to her employer—was not file-stamped by the clerk of

the circuit court until August 17, 2020, long after the 35-day deadline set out in section 3-103 of the Administrative Review Law had passed. Nor is it disputed that her complaint challenging the Board's December 5, 2019, decision—the decision finding her ineligible, under section 500(C) of the Act (*id.* § 500(C)), to receive unemployment benefits for a single two-week period, on the grounds that she had failed to demonstrate that she was medically able to return to work during that period—was file-stamped on December 20, 2019, a date well *within* the 35-day period for challenging either of the Board's decisions.

¶ 29     The record reflects that the circuit court made a factual finding that Ms. Wilder properly presented her complaints for administrative review from *both* of the Board's decisions on December 20, 2019, and that, through no fault of Ms. Wilder's, the clerk of the circuit court docketed and file-stamped only the complaint from the December 5, 2019, decision on that date. Noting Ms. Wilder's contention that "due to a series of errors by the Clerk of the Circuit Court – the second of her appeals [from the Board's December 2 decision] was never docketed," and having reviewed the parties briefing on the matter, the court stated in its initial order denying defendants' motion to dismiss: "[t]he court finds, *as a matter of fact*, that [Ms.] Wilder has made a showing of good cause warranting relief" (emphasis added).

¶ 30     The relief the court thought to provide was that referred to in Illinois Supreme Court Rule 9(d), which states that "[i]f a document is rejected by the clerk and is therefore untimely, the filing party may seek appropriate relief from the court, upon good cause shown." Ill. S. Ct. 9(d)(2) (eff. Aug. 14, 2020). As defendants pointed out in their motion to reconsider the court's order, however, Rule 9 is titled "Electronic Filing of Documents," and Ms. Wilder's complaints challenging the Board's decisions were not filed electronically but in person. Defendants convinced the circuit court that, absent the special relief articulated in Rule 9(d), it lacked the

authority to issue a *nunc pro tunc* order instructing the clerk to treat Ms. Wilder's complaint as though it had been filed on December 20, 2019, rather than on August 17, 2020. The court—quite reluctantly, it seems—granted defendants' motion for reconsideration and dismissed Ms. Wilder's complaint as untimely on this basis.

¶ 31    It is clear to us, however, that the circuit court did indeed have the authority to correct the filing date of Ms. Wilder's complaint, regardless of which mode of filing Ms. Wilder had attempted. The inherent authority of courts to issue *nunc pro tunc* orders is well recognized. See 1A Nichols Illinois Civil Practice § 11:18 (noting that "where it appears that a paper was delivered to the clerk and filed without being stamped as filed, an order may be entered that it be marked filed as of the date on which it was delivered to the clerk"). The phrase itself, from the Latin "now for then," means "[h]aving retroactive legal effect *through a court's inherent power*." (Emphasis added.) Black's Law Dictionary (11th ed. 2019). The ability of the court to correct the record in this manner " 'rests upon the maxim *actus curiae neminem gravabit*—an act of the court shall prejudice no one.' " *Id.* (quoting George L. Phillips, *An Exposition of the Principles of Pleading Under the Codes of Civil Procedure* §529, at 560 (1896)).

¶ 32    For in-person filings, "[d]elivery alone has been held to constitute filing," since "the person filing has no control over the officer who receives documents." *In re Estate of Davison*, 102 Ill. App. 3d 644, 645 (1981); see also *People ex rel. Madigan v. Illinois Commerce Comm'n*, 231 Ill. 2d 370, 384 (2008) (noting that "[a]long with the parties' responsibility to adhere to deadlines *** comes the assurance that a filing will be deemed filed when submitted"). "Subsequent ministerial tasks of the clerk"—such as affixing a file-stamp to the document—are evidence that a document has been filed "but are not essential to its perfection." *Davison*, 102 Ill. App. 3d at 645. Where, as here, the court is convinced that a party properly presented his or her filing to the clerk within the

statutory time for filing, errors attributable to the clerk's office should not render that filing untimely. See, *e.g.*, *Azim v. Department of Central Management Services*, 164 Ill. App. 3d 298, 299, 303 (1987) (reversing the circuit court's dismissal of a complaint for administrative review as untimely where the clerk of the court was presented with the complaint on the 34th day of the limitations period and where a "delay in the issuance of summonses was caused solely by errors committed by personnel in the clerk's office").

¶ 33    Rule 9(d), in our view, was intended by its drafters merely as a recognition that this inherent ability of the court, upon a showing of good cause, to correct errors of the clerk's office through the issuance of *nunc pro tunc* orders applies with no less force in the context of electronic filings. Nothing about the rule suggests to us that it was instead intended to limit the inherent power of the circuit court when electronic filing has not been employed.

¶ 34    Reversable error can exist when a circuit court has refused to exercise discretion "in the erroneous belief that it has no discretion as to the question presented." *People v. Queen*, 56 Ill. 2d 560, 565 (1974). We believe that is what occurred here when the circuit court granted defendants' motion for reconsideration.

¶ 35    In the alternative to their legal arguments concerning the court's ability to enter a *nunc pro tunc* order under these circumstances, defendants argue that there was no evidentiary basis for a finding of good cause to issue such an order. Citing *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984), defendants insist that Ms. Wilder, as the appellant, is obligated to provide this court with a sufficient record on appeal and that any doubt arising from the record's incompleteness should be construed against her. They point out that the record on appeal is missing several of Ms. Wilder's filings in opposition to their motion to dismiss and, notably, contains no sworn affidavit by her regarding what happened when she tried to file her complaints from the Board's orders. As

a result of Ms. Wilder's failure to supplement the record on appeal, they argue, we need not accept her contention that she presented both of her complaints for administrative review to the clerk of the circuit court for filing on December 20, 2019. The question, however, is not whether *we* accept that contention but whether the circuit court accepted it, which it clearly did. And absent a complete record, we must indeed conclude that the court's finding, which it took pains to express in both of its orders, was not against the manifest weight of the evidence.

¶ 36    Appellees, if they felt that the circuit court's factual conclusion was against the manifest weight of the evidence, could have supplemented the record. Ill. S. Ct. R. 329. They chose instead to let it stand as filed, apparently satisfied that its incompleteness would inure to their benefit. But on this record, there is simply no basis for us to conclude that the court's finding that events in the clerk's office unfolded as Ms. Wilder described was against the manifest weight of the evidence. See *Webster v. Hartman*, 195 Ill. 2d 426, 433-34 (2001) (noting that, absent a complete record, reviewing courts "will presume that the trial court heard adequate evidence to support its decision").

¶ 37    We note, moreover, that Ms. Wilder's account of what happened makes intuitive sense. Defendants insisted below that "[t]he only reason [Ms. Wilder] did not file a timely complaint of the Board of Review's December 2, 2019 decision was because she chose not to do so." That course of action would have been completely illogical, however, as defendants themselves must surely recognize. In a footnote to their appellate brief, they explain that "[w]hen the Board *ultimately* decided that [Ms.] Wilder was not eligible for benefits at all, the question whether she was eligible for benefits from June 23 to July 6, 2019, for purposes of section 500(C) of the Act [citation] became moot." (Emphasis added.) As the record makes clear, however, the Board decided the broader question *first*, on December 2, 2019, and then, for no reason this court can

13

discern, issued a second decision three days later concerning whether Ms. Wilder was medically cleared for work during a particular two-week period—a matter that was plainly of no further relevance. Given this unusual sequence of events, it is clear that Ms. Wilder could have gained nothing whatsoever by seeking administrative review of the Board's December 5 decision without *also* challenging its December 2 decision. This could certainly have played a part in the circuit court's assessment of her credibility.

¶ 38                                IV. CONCLUSION

¶ 39    For the above reasons, we reverse the circuit court's May 25, 2021, order dismissing Ms. Wilder's complaint for administrative review of the Board's December 2, 2019, as untimely and remand for further proceedings consistent with this order. On remand, and for the reasons stated herein, the circuit court shall enter an order directing the clerk of the circuit court to correct Ms. Wilder's initial filing dated August 17, 2020, *nunc pro tunc* to December 20, 2019.

¶ 40    Reversed and remanded with directions.